## No. 7919.

### STATE EX REL. CARCASS vs. JUDGE OF FIRST DISTRICT COURT.

The punitory Section of Act No. 44 of the Legislature of 1879, relative to the sale of Lottery tickets in this State, was not abrogated by Article 167 of the Constitution.

---

James C. Walker for the Relator:

The only legal relief left to Relator is by the writs of *certiorari* and prohibition applied for. Under article 90 of the present Constitution, this Court has the power to issue them independently of its appellate jurisdiction.

The District Judge should be prohibited from passing sentence upon the Relator, because the law under which he was prosecuted, Act No. 44 of 1879, was abrogated by article 167 of the Constitution. C. C. article 17, article 2; Constitution of 1879, articles 167 and 258.

F. C. Zacharie, Simeon Belden, Posey, and A. A. Grandpré as *amici curiæ*, on the same side.

J. A. Campbell for the Respondent :

We do not deny the operation and validity of the 167th article of the Constitution, nor that all laws contrary to the provisions of that article are null and void.

But those who affirm there is a contradiction between the three sections of the act of March, 1879, which make no mention of the Louisiana State Lottery Company, and only provide penalties against lotteries and the sale of lottery tickets and devices, should be prepared to show that contradiction distinctly.

The rule of law on this subject is fully established.

There must be an irreconcilable repugnancy between the existing law and the law subsequently enacted before the former is abrogated by the latter. The Constitution in the article under consideration declares that there must be contradiction, opposition, contrariety, before there can be any repeal or nullity under its terms.

The jurisprudence of this State is replete with discussions on the subject.

The old law is abrogated by the new, only when couched in the negative, or so clearly repugnant as to imply a negative.

A repeal will be implied only when the last statute contains provisions contrary to or irreconcilable with those of prior laws.

2 Henn. Dig. p. 788, ch. III.

The Supreme Court of the United States maintain the same rules, and employ language of a similar kind to express their conclusions. There must be a positive repugnancy between the provisions of a new law and the old, to effect a repeal by implication ; *and even then the* old law is *only* repealed to the extent of the repugnancy.

Woods vs. U. S. 16 Pet. 342.

McCool vs. Smith, 1 Black, 459.

It is manifest that the judge of the First District Court has performed his duty, and that there is no sufficient ground for the application the relator has made.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. The relator was prosecuted before the First District Court for the parish of Orleans, for having in his possession, with intent of selling the same, a fractional part of a lottery ticket, the sale of which it is alleged is forbidden in this State under penalty of law.

He pleaded guilty, subsequently moved to withdraw his plea, but was not allowed that privilege. Sentence was about to be passed upon him, when he applied to this Court for relief. The case not being one appealable in character, the Court granted a *certiorari,* a provisional restraining order, and a rule to show cause why a perpetual prohibition

should not issue. The object of the restraining order was to prevent the judge of the First District Court from passing sentence on the relator.

The relator alleged in justification of the complaint lodged here and of relief sought, that the law under which he was prosecuted, pleaded guilty, and was about to be sentenced, and which he had believed was in force when he refused to defend himself and admitted the charge, had become a dead letter ever since the adoption of the present Constitution, which has effectually repealed it in its entirety.

The law in question was approved March 27th, 1879, and bears No. 44 of the acts of that year. It contains six sections. Its evident object was to forbid absolutely the vending of lottery tickets in this State ; and in order to accomplish that purpose it provided for the infliction of fine and imprisonment on the violators of its prohibitions. It was intended to have a general effect throughout the State, and made no exceptions whatever. It went so far as to withdraw the charter of a corporation up to then in existence, and which had legal authority to deal in the lottery business.

The article of the Constitution relied on as repealing this law, is in the words following :

" The General Assembly shall have authority to grant lottery charters or privileges, provided each charter or privilege shall pay not less than forty thousand dollars per annum in money into the treasury of the State, and provided, further, that all charters shall cease and expire on the first of January 1895, from which time all lotteries are prohibited in the State. The forty thousand dollars per annum now provided by law to be paid by the Louisiana State Lottery Company, according to the provisions of its charter, granted in the year 1868, shall belong to the Charity Hospital of New Orleans, and the charter of said company is recognized as a contract binding on said State for the period therein specified, except its monopoly clause, which is hereby abrogated, and all laws contrary to the provisions of this article are hereby declared null and void ; provided said company shall file a written renunciation of all its monopoly features in the office of the Secretary of State within sixty days after the ratification of this Constitution."

The intention of the Convention of 1879 was clearly to repeal that portion of the Act which contemplated the destruction of the corporation named in the article, and which was previously authorized to deal in lottery tickets, to authorize the further existence, up to 1895, of that institution, but to strip it altogether of its pretensions to a monopoly, apparently accorded it by the act under which it was organized. It was the intention of the Convention to place on a footing of equality with this corporation all other individuals who might desire to deal in the

same business, but on condition, upon being chartered by the State, of the payment of an annual license of not less than forty thousand dollars to the State. In order to render compliance with this condition obligatory and effectual, it was necessary that there should be attached a sanction to the law. The Convention thought it unnecessary to embody one expressly in the article in question, for the reason that it already was in existence in a statute then in force, i. e. in the act of 1879, already mentioned.

It is expressly provided by that article 167 that all laws contrary to its provisions are declared null and void.

Of course, such portions of that law as were inconsistent with the article of the Constitution were repealed; but is the act of 1879 in each and all of its parts repugnant to the article of the Constitution under consideration? The portions which it is claimed were repealed, are those which prohibited *absolutely*, without any exception, and under all circumstances, the vending of lottery tickets, and *which inflicted a penalty for an infringement of prohibition.*

The law does not favor repeals by implication.

The insertion in article 167 declaring null and void all laws contrary to its provisions must be viewed as intended to retain in force the act of 1879, in so far as it was not derogated from by that constitutional enactment, and to lend assistance to its enforcement, for the protection of organizations chartered by the State, which shall, as a prerequisite, have paid the required licenses, for the relief of the State and of its charitable institutions.

This Court has no power to express any opinion or comment upon the morality or immorality of this constitutional provision. Its duty is to construe and to apply the law as it finds it in the organic and statutory enactments.

We find no irreconcilable discrepancy between the act and the article of the Constitution. We find that the Convention has merely derogated from the general prohibitory provisions of the act by making exceptions and conceding authority to the General Assembly to grant lottery charters or privileges on terms to be complied with as *conditions precedent and sine quibus non*, placing them all on a footing of equality after such chartering and fulfillment of terms and conditions.

Construing the act of 1879 and the article of the Constitution together, so as to give full effect to each and all the parts of both, and blending them together, we consider that the law of Louisiana on the subject of the vending of lottery tickets simply is:

The sale of lottery tickets in this State is absolutely prohibited, *unless* by organizations chartered by the State which, *before* dealing in that kind of speculation, shall have paid an annual license of not less

than forty thousand dollars to the State. There shall exist no monop-oly for the sale of such tickets or doing of such business. Individuals violating the law by selling lottery tickets, or dealing in the lottery business, *without having previously obtained a charter, and paid the re-quired license, in the manner provided by law, shall be prosecuted and punished by fine and imprisonment.* The Louisiana State Lottery Com-pany, previously in existence, shall continue its operations, *on* abdicating all its pretensions to a monopoly and on complying with the require-ments touching the payment of the license.

Finding as we do, that the punitory section of the act of 1879 has not been abrogated, as far as it affects individuals selling lottery tickets, or dealing in the lottery business, *who have not previously obtained a charter and paid the required license,* we conclude that the relator is not entitled to protection, for the reasons alleged by him against the ap-prehended sentence of fine and imprisonment.

It would be truly unjust to permit individuals who have not formed themselves into a corporation chartered by the State and not paid any license, to enjoy the same privileges as those awarded to a corporation chartered by the State, and which has paid the required license.

It is therefore adjudged that the restraining order heretofore made be dissolved, and that the application for a perpetual prohibition be re-fused at the cost of relator.

---

### On Application for Rehearing.

It is elementary that laws are repealed reversely or impliedly. Au-thorities to establish that proposition are entirely superfluous. Nothing is better settled than that the law does not favor repeals by implication. Statutes, unless *expressly* recalled, or absolutely destructive, the one of the other, will stand and co-exist. Where statutes and constitutional provisions can be so construed as to be made to harmonize and to prove ancillary, the one to the other, for the accomplishment of the object in view, it would be wrong to annihilate either. The Court would be pow-erless to do so.

We have found no inconsistency between the remaining sections of the act of 1879 and art. 167 of the present Constitution, and after a new and earnest effort to ascertain a conflict between them, we have been unable to change our previous opinion.

By the act of 1879 an absolute prohibition was enacted against the dealing in lottery business, and a penalty was provided for infringement of the prohibition. By art. 167 the *absolute* prohibition was changed into a *relative* one. Blended together, act of 1879 and art. 167 mean :—that there shall hereafter be no unrestrained dealing in lottery opera-

tions, under penalty of fine and imprisonment; but that dealing in the lottery·business will be tolerated when carried on by corporations chartered by the State and paying an annual license of no less than forty thousand dollars : consequently, that whoever shall otherwise deal in that sort of business, without having been chartered and without having paid the license, shall be liable to punishment.

Article 167 formally recognizes the Louisiana State Lottery as an institution chartered by the State, and determines the term of its existence, but *without any right of monopoly.*

The framers of the Constitution did away with the *exclusive* privilege accorded previously to that organization, and provided that, hereafter, all persons wishing to deal in the lottery business shall have the right to do so, as well as the Louisiana State Lottery Company, on obtaining a charter from the State and paying a license, as *pure quietus.* This was done to place all on a footing of equality.

A different construction of the act of 1879 and of art. 167 would authorize all individuals to deal in that kind of speculation without forming themselves into a corporation chartered by the State, and without paying a license. The Louisiana State Lottery Company could then repudiate its charter, exonerate itself from the payment of a license, the amount of which goes to a charitable institution essentially necessary for the relief of suffering humanity and without adequate means of self-sustenance. It was, no doubt, wise in the State to regulate reprehensible, but, perhaps irrepressible, inclinations for that sort of speculation, so as to draw from those who follow them,—as it were,—*honey from poison,* for the betterment of the destitute classes of society. It cannot be plausibly claimed, in the least degree, that the Convention intended to do away with those means of relief which could not be realized if the penal clause in the act of 1879 were considered as being now a dead letter.

No one can claim to enjoy the privileges exercised by the Louisiana State Lottery Company without, like it, obtaining a charter and paying a license.

The authorities quoted by the *amici curiœ* in their brief for a rehearing, from 15 Ill. 233, 3 Mich. 387, 1 Cal. 441, 3 Cal. 328, in addition to those previously referred to : 10 M. 575, 9 R. 413, 6 L. 135, 1 Coms. N. Y. 17, 16 Peters U. S. 342, 1 Black 470, are to the effect that, in cases of provisions of law repugnant and contradictory to each, the more recent repeal the former. The rulings are made mostly in cases in which the acts could not co-exist at all without contradiction in every particular. The first authorities are from cases in which—after a prohibition had been enacted—the legislature had *absolutely* and *unconditionally* recalled the prohibition and legalized acts previously forbidden. In the present

NEW ORLEANS, MAY, 1880.                        725

State ex rel. Carcass vs. Judge of the First District Court.

instance, the act of 1879 was not *absolutely* or *unconditionally* repealed. It was *relatively* or *conditionally* repealed. The penal provision was not therefore *peremptorily* done away with. It remains, and is to be enforced against individuals dealing in the lottery business otherwise than in the name of bodies chartered by the State and paying license. The penal provision will be inoperative against individuals dealing in that business in the name of chartered institutions paying license.

The Court has thus construed again the act of 1879 and art. 167, and has done so, in their mind, "*in favorem libertatis civis.*"

The application for a rehearing is refused.

Mr. Justice Todd having taken no part in the previous opinion, owing to absence, abstains from concurrence in the present one.