## NEW ORLEANS *v.* HOUSTON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Argued November 17, 18, 1886. — Decided December 6, 1886.

The service of process in this case having been upon the mayor of New Orleans, and the city having appeared and answered, the municipality is properly in court.

The effect of article 167 of the Constitution of Louisiana of 1879 is to revive the charter of the Louisiana State Lottery Company of 1868, except as to the clause conferring upon it the exclusive privilege of establishing a lottery and dealing in lottery tickets, notwithstanding its repeal in 1879; and also to recognize the charter thus modified as a contract binding on the State for the period therein specified.

*Stone* v. *Mississippi*, 101 U. S. 814, distinguished.

A grant in the Constitution of a State of a privilege to a corporation is not subject to repeal or change by the legislature of the State.

An assessment of a tax upon the shares of shareholders in a corporation appearing upon the books of the company, which the company is required to pay irrespective of any dividends or profits payable to the shareholder, out of which it might repay itself, is substantially a tax upon the corporation itself.

*United States* v. *Railroad Co.*, 17 Wall. 322, and *National Bank* v. *Commonwealth*, 9 Wall. 353, distinguished.

The case is stated in the opinion of the court.

*Mr. Walter H. Rogers* and *Mr. J. Ward Gurley, Jr.*, for appellants.

*Mr. John A. Campbell* for appellees.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On the 27th of January, 1881, the Louisiana State Lottery Company, alleging itself to be a corporation under the laws of the State of Louisiana, filed its bill in chancery against the City of New Orleans and the tax assessors for the Parish of Orleans, the object and prayer of which were to obtain a perpetual injunction restraining the defendants from the assessment and collection of certain taxes about to be enforced against the complainant by the seizure and sale of its property. On final hearing there was a decree in conformity with the prayer of the bill, from which the defendants below prosecute the present appeal.

The allegations of the bill are in substance, that by an act of the Legislature of the State of Louisiana, passed in 1868, being Act No. 25 of that year, the Louisiana State Lottery Company was established and organized as a corporation : — that, among other immunities and franchises granted by said act, it was provided in article 5 that the company "shall pay the State of Louisiana the sum of forty thousand dollars per annum, which sum shall be payable quarterly in advance, from and after the 1st day of January, 1869, to the State Auditor, who shall deposit the same in the treasury of the State, and which shall be credited to the educational fund; and said corporation shall be exempt from all other taxes and licenses of any kind whatever from the State, parish, or municipal authorities" : — that in the year 1871 legal proceedings were instituted by the City of New Orleans against the said company, in the Superior District Court for the Parish of Orleans, for the purpose of enforcing on behalf of said city certain taxes alleged to have been assessed against it, notwithstanding said exemption contained in its charter, the City of New Orleans claiming therein that said exemption was void : — that such proceedings were had thereon that on final hearing in the Supreme Court of Louisiana a judgment was rendered in favor of the lottery company, declaring said exemption to be valid and the said

taxes illegal : — that the said company claims that the provision in its said charter exempting it from taxes as aforesaid beyond the sum of $40,000, payable annually, is a contract between the State of Louisiana and itself, and has been expressly confirmed and recognized as such by the present Constitution of the State of Louisiana, adopted in 1879, in article 187, all the provisions of which, it is alleged in the bill, the complainants have complied with.

The bill further alleges that, notwithstanding the provisions of the said charter, and in defiance of the judgment of the Supreme Court of Louisiana, and contrary to the Constitution of the State, the defendants "are about to levy and assess a tax upon the capital stock and other property of your orator, and the other defendants hereinbefore named have threatened and are about to take proceedings against your orator for the collection of said illegal tax, which is illegal because prohibited by the Constitution of the United States as violative of the said contract between your orator and the State of Louisiana"; that the said officers of the State pretended to justify their action under the provisions of Act No. 77 of the Legislature of Louisiana of 1880, which the complainant avers to be null and void and of no effect, so far as it may be construed to authorize the proceedings of the defendants. The bill alleges that the complainant has always promptly paid the amount called for by its charter to the State Treasurer, and in advance, and owes nothing to the State on that account; and accordingly prays for an injunction to restrain the defendants from further attempts to enforce the collection of the tax complained of.

To this bill a joint and several answer was filed by all of the defendants. That answer admits the incorporation of the Louisiana State Lottery Company, as alleged in the bill, and that its charter constitutes a valid contract between the State of Louisiana and the company. It admits that the defendants are about to levy a tax upon the capital stock and upon other property of the complainant, but denies that such proceedings are illegal; and claims that Act No. 77 of the year 1880, passed by the Louisiana Legislature, is in no respect null and void.

On final hearing a decree was passed wherein "the court decrees and declares that the act of the Legislature (No. 77 of the acts of 1880), so far as it imposes a tax upon the capital stock of the complainant, or upon the shares of the stock held by the shareholders of the complainant, is in conflict with article 5, § 1, of complainant's charter, found in Act No. 25 of the acts of 1868, and therefore impairs the obligation of a contract and is void. The court further decrees and declares, that, under the provisions of said charter as adopted as a contract by the Constitution of 1879, the capital of the complainant and both in the aggregate and as held by its shareholders, is exempted from all taxation of every kind, excepting the annual payment of forty thousand dollars. The court further decrees that the defendants herein be enjoined and restrained in manner and form and to the extent prayed for in the bill of complaint herein."

It is objected to this decree, in the first place, on behalf of the City of New Orleans, that that municipality was not properly in court by due service of process, but the objection does not seem to be well founded in fact. There was service of process upon the mayor, which is conceded to be the statutory method of serving process in such cases, and the city actually appeared by attorney and answered.

The principal question, however, arises upon the terms of article 167 of the Constitution of the State of 1879. That clause is as follows: "The General Assembly shall have authority to grant lottery charters or privileges; *provided* each charter or privilege shall pay not less than forty thousand dollars per annum in money into the treasury of the State; *and provided further*, that all charters shall cease and expire on the first of January, eighteen hundred and ninety-five, from which time all lotteries are prohibited in the State. The forty thousand dollars per annum now provided by law to be paid by the Louisiana State Lottery Company, according to the provisions of its charter granted in the year 1868, shall belong to the Charity Hospital of New Orleans, and the charter of said company is recognized as a contract binding on the State for the period therein specified, except its monopoly

clause, which is hereby abrogated; and all laws contrary to the provisions of this article are hereby declared null and void; *provided* said company shall file a written renunciation of all its monopoly features in the office of the Secretary of State within sixty days after the ratification of this Constitution."

It appears that by an act of the Legislature of Louisiana, which took effect on the 31st of March, 1879, Act No. 25 of the year 1868, which incorporated and established the Louisiana State Lottery Company, and all other laws on the same subject-matter, were repealed, and the Louisiana State Lottery Company was thereby abolished and prohibited from drawing any and all lotteries or selling lottery tickets, either in its corporate capacity, or through its officers, members, stockholders, or agents, either directly or indirectly. That act also made it a penal offence to draw any lottery or have any connection or interest in or with the drawing of any lottery in the State, or to sell or offer to sell any lottery tickets, or to set up or promote any lottery in the State. This statute took effect before the adoption of the Constitution of 1879, and was in force when the latter went into operation in December, 1879.

It is now contended, on the part of the appellants, that article 167 of the Constitution of the State does not have the effect to revive the original charter of the Louisiana State Lottery Company as though it had never been repealed, but revives it only so far as under that clause the General Assembly was authorized to grant lottery charters or privileges in the future; that this constitutional authority to grant new lottery charters or privileges does not warrant the Legislature in stipulating, by way of contract, that the minimum license tax of $40,000 per annum shall be in lieu of all other taxes upon the property, and operate to exempt the company, so far as taxation is concerned, from the effect of other clauses of the Constitution.; that, by other provisions of the Constitution, particularly article 207, no property can be exempt from taxation except public property, places of religious worship or burial, charitable institutions, buildings and property used exclusively for colleges and other school purposes, real and personal estate of public libraries, household property to the

value of $500, and for the period of ten years from the adoption of the Constitution the capital, machinery, and other property employed in certain enumerated manufactories, w erein not less than five hands are employed in any one factory.

It is argued that the whole proper effect to be given to the provisions of article 167 of the Constitution is to secure to the Louisiana State Lottery Company such a charter as the General Assembly was authorized thereby to grant to any other lottery company, and to modify it as though it had been actually granted by the General Assembly under that clause. This intent is inferred from the language of the Constitution, which specifically forbids the future existence of the "monopoly clause" of the charter of the company, and requires it to file a written renunciation of this feature with the Secretary of State within sixty days after the ratification of the Constitution; the object in view being, as it is contended, obviously, to place the Louisiana State Lottery Company under its charter as granted in the year 1868, but subject to and modified by the provisions of the Constitution of 1879, on an equal footing merely with other and new lottery companies, to which by the terms of the Constitution the General Assembly was authorized to grant charters; and the conclusion deduced is, that, as under that Constitution the General Assembly had no authority to grant a charter for a lottery company which should contain the exemption relied upon as the ground of relief in the present suit, the exemption so relied on was repealed by the Constitution.

The argument seems to be, that if the Louisiana State Lottery Company is exempt from taxation beyond the annual sum of $40,000, and other companies to be chartered under the Constitution of 1879 are not and cannot be, the monopoly secured to the former by its original charter is perpetuated and not abrogated, as it was the express purpose of the Constitution to accomplish, for the reason that such a discrimination effectually and in advance prevents all possible competition.

The charter of the Louisiana State Lottery Company, being Act No. 25 of the year 1868, establishes a corporation for the

purpose of carrying on the business of a lottery, with a capital
stock of $1,000,000. By the 4th section of the 8th article it
was provided that the corporation should continue during the
term of twenty five years from January 1, 1869, for which
time, it was added, it "shall have the sole and exclusive privi-
lege of establishing and authorizing a lottery or series of lot-
teries, and selling and disposing of lottery tickets, policy com-
bination devices, and certificates and fractional parts thereof."
And by § 5 of the same article it was provided "that the said
corporation shall also have the sole right and privilege, during
the whole term of its existence as hereinbefore provided for,
to dispose of by lottery, or series of lotteries, any lands, im-
proved or unimproved, which said corporation may become
possessed of by purchase or otherwise."

The exclusive right conferred by these provisions became
the subject of judicial consideration by the Supreme Court of
Louisiana in the case of *Louisiana State Lottery Co.* v. *Richoux,*
decided in November, 1871, and reported in 23 La. Ann. 743.
By the decision in that case the exclusive right claimed by the
Louisiana State Lottery Company to establish lotteries and to
sell lottery tickets in the State, was adjudged in its favor by
an injunction restraining the defendants from vending lottery
tickets of other companies, in violation of the exclusive right
claimed by the plaintiffs. The validity of the exemption of
the lottery company from taxation in excess of the annual
sum of $40,000, as stipulated in article 5, § 1, of its charter,
was upheld by a decision of the same court in the case of
*Louisiana State Lottery Co.* v. *New Orleans,* 24 La. Ann. 86.
The exemption was attacked in that case on the ground that
it was in violation of the State Constitution then in force, be-
cause it infringed the principle of equality and uniformity in
the matter of imposing taxes, the Legislature being prohibited
from exempting from taxation any species of property except
such as was actually used for charitable, educational, or reli-
gious purposes, and for the additional reason that it granted
certain rights to the plaintiff which were denied to other
citizens of the State. In reference to these objections the
Supreme Court of Louisiana said: "It may be said that the

power of a State Legislature to impose what is known as a commutation tax is a well recognized power, not only in our own jurisprudence, but generally. 11 Ann. 733; 9 Wall. 50; 17 Ill. 291; 30 Ind. 146. In the act under consideration the Legislature has deemed it advisable to grant to the lottery company an exemption from all other taxation except that of paying $40,000 per annum to the State for public education. On the commutation principle, we think the act is not violative of the Constitution. It is not clear that the city has any ground to object to this exemption by the State of the company it claims the right to require the payment of licenses from, the city being a municipal corporation and deriving its right to levy licenses from the State, and in this instance the right is withheld." The City of New Orleans was accordingly enjoined from further attempts to collect from the lottery company any municipal taxes or licenses.

It was in view of these decisions of the Supreme Court of the State, that the present Constitution was framed and adopted. Article 167 of that instrument expressly recognizes the charter of the Louisiana State Lottery Company, as granted in the year 1868, as existing with the force both of law and of contract, with the exceptions mentioned. It specifies that "the $40,000 per annum *now provided by law* to be paid by the Louisiana State Lottery Company, according to the provisions of its charter, granted in the year 1868, shall belong to the Charity Hospital of New Orleans;" but the only law which provided for the payment of $40,000 per annum was the charter of the company, and this clause diverts it from the educational fund, to which it had been appropriated by the terms of the charter, to the uses of the Charity Hospital of New Orleans. The article of the Constitution then proceeds to say: "And the charter of said company is recognized *as a contract* binding on the State for the period therein specified, except its monopoly clause, which is hereby abrogated." The monopoly clause hereby excepted and abrogated can be no other than that already referred to as contained in §§ 4 and 5 of article 8, by which was conferred upon the corporation the sole and exclusive privilege of establishing and authorizing a

lottery or series of lotteries, and selling and disposing of lottery tickets, &c. These are the only clauses in the charter granting any exclusive rights, and, therefore, the only ones which can be properly styled monopoly clauses.

· The constitutional article then proceeds to say that "all laws contrary to the provisions of this article are hereby declared null and void." This clause operates as a repeal of so much of Act No. 44, approved March 27, 1879, as repeals the charter of the Louisiana State Lottery Company, and prohibits it from drawing lotteries and selling lottery tickets. That it did operate to that extent, but no further, was the express decision of the Supreme Court of Louisiana in the case of *Carcass* v. *Judge of First District Court*, 32 La. Ann. 719. It was held in that case that those portions of Act No. 44 which define the offences of drawing lotteries and selling lottery tickets, and providing punishment therefor, by all persons other than the Louisiana State Lottery Company, were not affected by the Constitution of 1879. The court in its opinion says: "Construing the act of 1879 and the article of the Constitution together, so as to give full effect to each and all the parts of both, and blending them together, we consider that the law of Louisiana on the subject of the vending of lottery tickets simply is : The sale of lottery tickets in this State *is* absolutely prohibited *unless* by organizations chartered by the State, which, *before* dealing in that kind of speculation, shall have paid an annual license of not less than forty thousand dollars to the State. There shall exist no monopoly for the sale of such tickets or doing of such business. Individuals violating the law by selling lottery tickets or dealing in the lottery business, *without having previously obtained a chárter and paid the required license in the manner provided by law, shall be prosecuted and punished by fine and imprisonment.* The Louisiana State Lottery Company, previously in existence, shall continue its operations on abdicating all its pretensions to a monopoly, and on complying with the requirements touching the payment of the license."

The effect, therefore, of article 167 of the Constitution of Louisiana is to revive the charter of the Louisiana State

Lottery Company granted in the year 1868, notwithstanding its repeal by Act No. 44 of the year 1879, except as to the clause which confers upon it the exclusive privilege of establishing a lottery and dealing in lottery tickets, and to recognize the charter thus modified as a contract binding on the State for the period therein specified. This renews and establishes the obligation of the corporation under § 1, article 5 of its charter, to pay to the State the annual sum of $40,000; in consideration of which it is declared to be "exempt from all other taxes and licenses of any kind whatever, whether from State, parish, or municipal authorities."

In answer to the argument of counsel that this places the Louisiana State Lottery Company, under the Constitution of 1879, on a better footing than any other lottery company chartered by the General Assembly thereafter, for the reason that no such exemption can be granted to the latter, it is sufficient to say, that, if this consequence be admitted, the monopoly, which is supposed to be thus created in favor of the Louisiana State Lottery Company, is not one derived under any clause of its charter as granted in the year 1868, but is one created by the Constitution itself, although, merely by way of inference, by this mode of interpretation.

It is further contended, however, on the part of the appellants, that if the charter of the Louisiana State Lottery Company is recognized as a contract by article 167 of the Constitution, it is not such a contract as is protected by the Constitution of the United States against future legislation by the State impairing its obligation, for the reason that its subject-matter is embraced within the scope of the police power of the State, the exercise of which cannot be effectually bound by contract. And thus the case is thought to be brought within the principle established by this court in the case of *Stone* v. *Mississippi*, 101 U. S. 814, 820. In its opinion in that case the court said: "The contracts which the Constitution protects are those that relate to property rights, not governmental. It is not always easy to tell on which side of the line which separates governmental from property rights a particular case is to be put, but in respect to lotteries there can

be no difficulty. They are not, in the legal acceptation of the term, *mala in se*, but, as we have just seen, may properly be made *mala prohibita*. . . . Certainly the right to suppress them is governmental, to be exercised at all times by those in power at their discretion. Any one, therefore, who accepts a lottery charter does so with the implied understanding that the people in their sovereign capacity, and through their properly constituted agencies, may resume it at any time when the public good shall require, whether it be paid for or not. All that one can get by such a charter is a suspension of certain governmental rights in his favor, subject to withdrawal at will. He has in legal effect nothing more than a license to enjoy the privilege, on the terms named, for the specified time, unless it be sooner abrogated by the sovereign power of the State. It is a permit, good as against existing laws, but subject to future legislative and constitutional control or withdrawal."

This language must be construed in reference to the circumstances of the case in respect to which it was used. That was a case of an act of the Legislature of Mississippi granting a charter to a lottery company abrogated by a provision in the Constitution of the State subsequently adopted. The converse is the present case. The grant of the charter to the Louisiana State Lottery Company is contained in the Constitution, and the question is whether the Legislature, acting under that Constitution, can contravene it. That is a question which needs no answer; its statement is sufficient. It is undoubtedly true that no rights of contract are or can be vested under this constitutional provision which a subsequent Constitution might not destroy without impairing the obligation of a contract, within the sense of the Constitution of the United States, for the reason assigned in the case of *Stone* v. *Mississippi*. But an ordinary act of legislation cannot have that effect, because the constitutional provision has withdrawn from the scope of the police power of the State, to be exercised by the General Assembly, the subject-matter of the granting of lottery charters, so far as the Louisiana State Lottery Company is concerned, and any act of the Legislature

contrary to this prohibition is upon familiar principles null and void. The subject is not within the jurisdiction of the police power of the State, as it is permitted to be exercised by the Legislature under the Constitution of the State.

It is next contended, on the part of the appellants, that the exemption contained in the charter of the Louisiana State Lottery Company, as confirmed by the Constitution of the State, does not extend further than those taxes and licenses in excess of the annual sum of $40,000, which may be assessed upon the corporation itself; and it is said that the tax sought to be levied, and the assessment of which has been enjoined in the present case, is not a tax upon the corporation itself, but upon the shareholders on account of their shares in its capital stock held by them as individuals. The facts in regard to the character of the tax, and the mode of its assessment, do not clearly appear from the pleadings. In the bill it is alleged that the defendants " are about to levy and assess a tax upon the capital stock and other property of your orator," and " are about to take proceedings against your orator for the collection of said alleged tax . . . by serving a notice to that effect, to seize and sell the property rights and credits of your orator," and that these acts are done under the pretended authority of " the provisions of Act No. 77 of the Legislature of Louisiana of 1880, which said law," it is averred, " is null and void and of no effect, so far as your orator is concerned, inasmuch as by authorizing the levy of a tax upon the property of your orator, other than that provided for in the charter of your orator as aforesaid, said act violates the contract between your orator and the State of Louisiana by requiring of your orator other taxes than those provided for in said charter, and is repugnant to paragraph 2, section 10 of article 1 of the Constitution of the United States."

In the answer the defendants " admit that, at the time of the issuance of the preliminary injunction herein, the State assessors for the Parish of Orleans were about to levy a tax upon the capital stock of the complainant, and upon other of complainant's property;" and the State tax collector admits that he had served notice upon the company, that he was

about "to seize and sell the property rights and credits of complainant, and to take the legal measures to enforce the collection of the tax complained of." It is also admitted, on the part of the city of New Orleans, that it intended to compel payment of the taxes assessed as aforesaid on its behalf, and Act No. 77 of the Legislature of Louisiana of 1880 is set up as a justification. Section 48 of that act is as follows: "That no assessment shall hereafter be made under that name, as heretofore, of the capital stock of any national bank, State bank, banking company, banking firm, or banking association, or of any corporation, company, firm, or association, whose capital stock is represented by shares, but the actual shares shall be assessed to the shareholders who appear as such upon the books, regardless of any transfer not registered or entered upon the books; and it shall be the duty of the president, or other proper officer, to furnish to the tax collector a complete list of those who are borne upon the books as shareholders; and all the taxes so assessed shall be paid by the bank, company, firm, association, or corporation, which shall be entitled to collect the amounts from the shareholders or their transferees. All property owned by the bank, company, firm, association, or corporation, which is taxable under sections one and three of this act, shall be assessed directly to the bank, company, firm, association, or corporation, and the *pro rata* of such direct property taxes, and of all exempt property, proportioned to each share of capital stock, shall be deducted from the amount of taxes assessed to that share under this section. . . . Such assessments shall be made where the bank, etc., is located, and not elsewhere, whether the shareholders reside there or not. . . ."

It is well settled by the decisions of this court that the property of shareholders in their shares, and the property of the corporation in its capital stock, are distinct property interests, and, where that is the legislative intent clearly expressed, that both may be taxed. *Van Allen* v. *Assessors,* 3 Wall. 573; *The Delaware Railroad Tax,* 18 Wall. 206; *Farrington* v. *Tennessee,* 95 U. S. 679.

In *Tennessee* v. *Whitworth,* 117 U. S. 129, 136; the Chief

Justice delivering the opinion of the court, said : " In corpora-tions four elements of taxable value are sometimes found : 1, franchises ; 2, capital stock in the hands of the corporation ; 3, corporate property ; and, 4, shares of the capital stock in the hands of the individual stockholders. Each of these is, under some circumstances, an appropriate subject of taxation ; and it is no doubt within the power of a State, when not restrained by constitutional limitations, to assess taxes upon them in a way to subject the corporation or the stockholders to double taxation. Double taxation is, however, never to be presumed. Justice requires that the burdens of government shall, as far as is practicable, be laid equally on all, and if property is taxed once in one way, it would ordinarily be wrong to tax it again in another way, when the burden of both taxes falls on the same person. Sometimes tax laws have that effect; but if they do, it is because the legislature has unmistakably so enacted. All presumptions are against such an imposition."

But the question of legislative intent is always open upon the language of the exemption. In the present case the cor-poration is exempted by its charter from all other taxes and licenses of any kind whatever in excess of the sum of $40,000 per annum, and yet by Act No. 77, though the assessment is not to be made upon its capital stock, but upon the shares of shareholders appearing upon its books, nevertheless, the tax so assessed is to be paid by the company, although it is entitled to collect the amount so paid from the shareholder on whose account it is payable ; but this payment by the company is to be made irrespective of any dividends or profits payable to the shareholder out of which it might be repaid. That it is sub-stantially a tax upon the corporation itself, is unequivocally shown by the subsequent clause, which authorizes a deduction from the amount of taxes assessed to each share of its propor-tion of the direct property taxes paid by the company as such under §§ 1 and 3, and of all exempt property belonging to the corporation. But as all the property of the Louisiana State Lottery Company is exempt from taxes after payment of the annual sum of $40,000, nothing remains to be charged as a tax upon the shareholder as distinct from the corporation

under the provisions of this section. Indeed, it is quite apparent from the language of the whole section, that, while nominally the taxes authorized are not to be assessed upon the capital stock of the corporation in the aggregate and as its property, yet in substance that is its effect. The taxes are assessed upon the actual shares as registered in the names of individual shareholders, but are to be paid by the corporation, so that while the form and mode of taxation is changed, its substance remains as though assessed against the corporation by name.

The case differs altogether from that of *United States* v. *Railroad Co.*, 17 Wall. 322, in which it was held that the tax provided for in the 122d section of the Internal Revenue Act of 1864, as amended, requiring railroad and other corporations to pay a tax upon interest and dividends payable by them, with the right to deduct the same from the amounts otherwise due to creditors and stockholders, was a tax upon the latter and not upon the corporation, because the corporation was made use of merely as a convenient means of collecting the tax. And it cannot be considered as ultimately a tax upon the shares, as the property of the shareholders, within the principle of the decision in *National Bank* v. *Commonwealth*, 9 Wall. 353. There the act of Congress expressly distinguished between the taxing of the bank and the taxing of its shareholders on account of their shares, and, as was held in that case, left it open to the State to collect the tax levied on the shares by imposing the duty of collecting it upon the corporation. That, we think, is prohibited in this case by the terms of the contract contained in the charter, which exempts the corporation from the payment of all taxes whatever in excess of the specified annual sum, whether levied on it or to be paid by it on any account whatever. A tax such as that sought to be imposed upon the company by the appellees, is a tax upon the corporation within the meaning or the prohibition of its charter, because it is compelled to become surety for taxes nominally imposed upon its stockholders, and is made liable primarily for their payment; a payment which, in the first instance, must be made out of the corporate property,

without other recourse than an action against individual stockholders to recover the amounts advanced on their account.

The fair inference is that the taxation of the Louisiana State Lottery Company is not within the purview of § 48 of Act No. 77 of the year 1880, and that it was not within the intention of the Legislature, as expressed in that act, to impose upon the company any other taxes than those provided for in its own charter; but, if otherwise, Act No. 77 is void, as a law impairing the obligation of a contract.

We find no error in the decree of the Circuit Court, and it is therefore

*Affirmed.*