nant adheres, and prevails against such a purchaser. Tulk v. Moxhay, 2 Phil. Ch. 774; Western v. MacDermott, L. R. 2 Ch. App. 72; Whitney v. Railway Co., 11 Gray, 359; Clements v. Welles, L. R. 1 Eq. 200; De Mattos v. Gibson, 4 De Gex & J. 276; Clark v. Flint, 22 Pick. 231.

(6) The complainant's licensees, the users of Peninsular machines, by dealing with those patented machines in a manner contrary to the conditions and limitations of the license, infringe the patents for the inventions embodied in the machines. Cohn v. Rubber Co., 3 Ban. & A. 568; Starling v. Plow Works, 32 Fed. Rep. 290; Fetter v. Newhall, 17 Fed. Rep. 841; Willis v. McCullen, 29 Fed. Rep. 641.

(7) One who assists in an infringement of patent rights by designedly furnishing to the actual infringer the means by which his infringement is effected, and for the intended purpose of promoting such infringement, is a contributory infringer, and is liable to the extent of his contribution to the infringement. Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 40 Fed. Rep. 577.

(8) Any act, done with intent to contribute directly to an infringement of patent rights, is wrongful, and will be enjoined by a court of equity, although in itself, and considered apart from its intended purpose, such act might be lawful. Wallace v. Holmes, 9 Blatchf. 65; Holly v. Machine Co., 18 Blatchf. 327, 4 Fed. Rep. 74; Bowker v. Dows, 15 O. G. 510; Travers v. Beyer, 26 Fed. Rep. 450; Willis v. McCullen, supra; Celluloid Manuf'g Co. v. American Zylonite Co., 30 Fed. Rep. 437; Alabastine Co. v. Payne, 27 Fed. Rep. 559; Tie Supply Co. v. McCready, 4 Ban. & A. 588; Boyd v. Cherry, 50 Fed. Rep. 279.

*Dyrenforth & Dyrenforth, for defendants.*

(1) The remedy of a party to a contract, in case of breach, is against the other party thereto. The law gives this mode of redress, and, though the breach of contract may be induced by a third party, yet the act of breach is not his, and the injured party has no cause of action against such a third party.

(2) By the restriction placed upon the use of its Peninsular machines, the complainant seeks to establish a monopoly of the manufacture of unpatented articles, namely, the button fasteners. This is unconscionable, in restraint of trade, and the alleged contract is void. Machine Co. v. Earle, 3 Wall. Jr. 320; Wilcox & Gibbs Sewing-Mach. Co. v. Gibbens Frame, 17 Fed. Rep. 623; Manufacturing Co. v. Gormully, 12 Sup. Ct. Rep. 632.

Before the expiration of the time allowed for the submission of briefs by defendants' counsel, they withdrew from the case.

JENKINS, District Judge, directed an interlocutory decree to be entered as follows, as upon a default: "An order will be entered overruling the demurrer, and requiring an answer by the first Monday of August. An order will also be entered allowing an injunction pendente lite to issue pursuant to the prayer of the bill."

Subsequently the defendants submitted to a final decree making the injunction perpetual.

---

### CITY OF BOSTON v. BEAL.

(Circuit Court of Appeals, First Circuit. February 8, 1893.)

### No. 39.

NATIONAL BANKS—STATE TAXATION OF SHARES—INSOLVENCY.

Pub. St. Mass. c. 13, §§ 8–10, provide that shares of stock in all banks, state and national, shall be taxed to the owners thereof, to be paid in the first instance by the bank itself, which, for reimbursement, shall have a lien

on the shares and all the rights of the shareholders in the bank property. *Held*, that no suit for this tax can be maintained against the receiver of an insolvent national bank where the property represented by the shares has disappeared.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

In Equity. Bill by the city of Boston against Thomas P. Beal, as receiver of the Maverick National Bank of Boston, to recover the sum of $12,096 for taxes due October 1, 1891. The assessment was made under Pub. St. Mass. c. 13, §§ 8–10, which, in effect, provide that shares of stock in all banks, state and national, shall be taxed to the owners thereof, to be paid in the first instance by the bank itself, which, for reimbursement, shall have a lien on the shares and all the rights of the shareholders in the bank property. The circuit court dismissed the bill. See 51 Fed. Rep. 306. Complainant appeals. Affirmed.

Thomas M. Babson, for appellant.

Edward W. Hutchins, Henry Wheeler, and Frank D. Allen, U. S. Atty., for appellee.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

The decree of the court in this case was entered as follows:

"Judges PUTNAM and WEBB concurring, and Judge NELSON dissenting, the decree of circuit court is affirmed."

―――――――――

DIAMOND PLATE GLASS CO. v. MINNEAPOLIS MUT. FIRE INS. CO.

(Circuit Court, D. Indiana. June 29, 1892.)

FOREIGN INSURANCE COMPANY—SERVICE OF SUMMONS.

The summons in an action against a foreign insurance company upon a liability incurred by doing business in the state of Indiana may be served upon the auditor of state, if there is no agent in the county where the suit is brought, though the company has never been licensed to do business in the state, and has never filed with the auditor of state a written consent to such service of summons. Elliott's Supp. §§ 993, 994. Ehrman v. Insurance Co., 1 Fed. Rep. 471, followed.

Statement by WOODS, Circuit Judge:

The plaintiff brought this action against the defendant upon a policy of insurance to recover a loss by fire. The defendant filed a plea to the jurisdiction of the court. Upon a trial of the issue joined upon the plea, it appeared from the evidence that the plaintiff is an Indiana manufacturing company, owning a plate-glass factory at the city of Kokomo; that the defendant is a Minnesota insurance company doing business in the state of Indiana, but that it has never been licensed to do business in the state, and has never filed with the auditor of state a written consent to the service of process upon him in actions against the company. The company never had an agent residing in the state; but it did business in the state through traveling solicitors residing in Chicago, at which city its policies were issued. The summons in the case was served upon the auditor of state under "An act concerning foreign insurance companies," approved March 5, 1883. The first and the second sections of this act (Elliott's Supp. §§ 993, 994) are as follows: