ST. JOHNS NATIONAL BANK *v.* TOWNSHIP OF BINGHAM.

1. Taxes—Personal Property—Sale Before Lien Attaches.

A purchaser of bank stock prior to December 1st takes it free from any lien for taxes, under Act No. 206, Pub. Acts 1893, § 40, providing that all personal taxes shall become a lien on personal property on December 1st in each year, and shall take precedence of any sale, mortgage, or other lien executed or made "after" that date.

2. Same—Bank Stock.

A bank cannot be compelled to use its assets to pay a tax on certain shares of its stock where it cannot reimburse itself against the stock, as provided by law.

3. Same—Suit at Law—Equitable Relief.

A bank cannot maintain a bill to restrain the prosecution of an action at law to recover a tax assessed against certain of its stock, on the ground that such stock was transferred by the owner before the tax became a lien, since that fact may be set up as a defense to the suit at law.[1]

Appeal from Clinton; Daboll, J. Submitted April 28, 1897. Decided May 28, 1897.

Bill by the St. Johns National Bank against the township of Bingham to restrain the prosecution of a suit to collect a tax. From a decree dismissing the bill on demurrer, complainant appeals. Affirmed.

*Spaulding & Norton*, for complainant.

*Will H. Brunson*, for defendant.

Long, C. J. The bill in this case alleges that in May, 1895, the supervisor of the township of Bingham listed against Robert M. Steel, of St. Johns, certain real and

---

[1] An extensive collection of authorities respecting the use of an injunction against the collection of illegal taxes is found in a note to *Odlin* v. *Woodruff*, (Fla.) 22 L. R. A. 699.

personal property, and also "stock of St. Johns National Bank," at the valuation of $26,650, and that on the tax roll he afterwards assessed a tax on said stock in the sum of $429; that he listed like "stock" against George A. Steel, and assessed a tax upon it in the sum of $45.95; that he listed like "stock" against Robert G. Steel, and assessed a tax upon it in the sum of $30.63; and that on November 30, 1895, the said supervisor delivered the tax roll and his warrant to the township treasurer. The bill further alleges that the several taxes became a personal debt against the said taxpayers from the date of its assessment, and a lien upon their personal property on December 1, 1895. It further alleges that the said Robert M. Steel sold 220 shares of said stock to the St. Johns National Bank, for full value, on the 18th day of October, 1895, and due transfer of it was then made on the books of the bank; that on September 13, 1894, he pledged other 50 shares of said stock to one John Hicks, to secure an indebtedness exceeding the value of the stock; that the certificates of said stock were then delivered to said Hicks, who held them till December 13, 1895, when they became the absolute property of said Hicks, who sold 28 of said shares to C. C. Vaughan, and transfer of the entire 50 shares was then made on the books of the bank,—28 to Vaughan, and 22 to Hicks; that the said 270 shares represented all the holdings of said Steel in the stock of said bank; that George A. Steel sold all his stock in said bank (30 shares) to said bank, for full value, December 4, 1895; that said Robert G. Steel·sold all his stock (20 shares), for full value, as follows: To E. G. Bement, 5 shares, August 13, 1895; and to the Clinton County Savings Bank, 15 shares, December 2, 1895. It is further alleged that in the month of February, 1896, the township treasurer demanded said taxes of Peter E. Walsworth, cashier of said bank, who then informed the said treasurer that none of the Steels held any stock in said bank, and that the said treasurer should make the taxes out of the said taxpayers or their

personal property. The bill alleges that there was an abundance of personal property in said township belonging to said taxpayers, and upon which the said taxes were a lien, out of which said taxes could be made by distress and sale, in accordance with the mandate of the warrant, but that on the 29th day of February the said treasurer, instead of pursuing said personal property or the taxpayers themselves, who were financially responsible, brought suit to recover the said taxes from the bank in the name of the township, and that he then returned his tax roll and warrant to the county treasurer, and took out a supplemental warrant for the collection of said taxes, and still holds said warrant; that said suit at law is at issue; that the bank cannot adequately defend at law; and restraint of said suit at law is prayed. The defendant interposed a general demurrer to the bill for want of equity, and, upon the hearing, the bill was dismissed. From this decree the complainant appeals.

The transfer of 220 shares of stock was made to the bank by Robert M. Steel before the tax became a lien upon the stock. Under section 40, Act No. 206, Pub. Acts 1893, all personal taxes become a lien on personal property on the 1st day of December in each year, "and shall take precedence of any sale, assignment, or chattel mortgage, levy, or other lien on such personal property, executed or made after said 1st day of December, except where such property is actually sold in the regular course of trade." Thus, the statute, by implication, recognizes that the purchaser, or one who takes by assignment, etc., takes it free from any lien for taxes, if the sale or lien, etc., is made before December 1st. The bill also alleges that on September 13, 1894, Robert M. Steel assigned to John Hicks 50 shares of stock, as security for an amount exceeding the value of the stock, and that on December 13, 1895, Hicks obtained the ownership of it. It also appears that on August 13, 1895, E. G. Bement acquired by purchase 5 shares, at their full value, from Robert G. Steel. The sale to Bement was prior to the lien of the

township for the taxes. The lien of Hicks was also prior to the lien of the township, and made so by the statute, and exceeded the value of the stock. All these shares of stock, amounting to 275 shares, had been sold prior to the tax lien, and the bank certainly could not be held to pay the taxes thereon. This covered all the holdings of Robert M. Steel in said bank.

Robert G. Steel had left, of his holdings, 15 shares, which, on December 2d, he sold to the Clinton County Savings Bank. George A. Steel held his stock (30 shares) till December 4th, when he sold it to complainant. When these last two sales were made, the taxes had become a lien, and the shares were liable for the taxes. The bank, in its purchase from George A. Steel, took the 30 shares subject to the lien, upon which the complainant must pay, and also upon the 15 shares sold to the Clinton County Savings Bank. *Eyke* v. *Lange*, 104 Mich. 26. The defendant in no event would have the right to compel the bank to pay upon the other shares, the sale having been made before the tax became a lien. A bank cannot be compelled to use its assets to pay a tax where it cannot reimburse itself against the stock, as provided by law. *City of Boston* v. *Beal*, 51 Fed. 306; *City of New Orleans* v. *Houston*, 119 U. S. 265. If this could be done, it would substantially be a tax upon the corporation itself.

It is contended, however, that a suit in equity cannot be brought to restrain the collection. We agree with counsel in this contention; but, to save the parties the expense of prolonged litigation, we have discussed the merits of the case. This will not be taken as a precedent in future cases. In the defense to the action at law brought by the township, this defense could be set up. It is purely a legal one, and is devoid of any equitable considerations. Every ground for relief set up in the bill is, if shown, a complete defense to the suit at law, so far as the tax upon the stock transferred before the tax became a lien is concerned. The case is not like *Lenawee Co. Sav. Bank* v. *City of Adrian*, 66 Mich. 273. There the

collector was proceeding to enforce the payment of the tax by seizure of the bank furniture and fixtures. Neither was the question raised in that case, and it appeared that irreparable injury might be done, and the court interfered to prevent it.

The court properly sustained the demurrer and dismissed the bill. That decree will be affirmed, with costs of both courts to the defendant.

The other Justices concurred.