[No. 2602. Decided September 27, 1897.]

CHARLES H. BAKER, *as Receiver, Respondent,* v. COUNTY OF KING, *Appellant.*

TAXATION — ASSESSMENT OF PERSONAL PROPERTY — FINALITY OF EQUALIZATION — SHARES IN INSOLVENT NATIONAL BANKS — LIABILITY OF RECEIVER FOR TAXES.

The action of the assessor and of the county board of equalization as to assessments upon personal property is final in the absence of fraud or malice on their part.

The receiver of an insolvent national bank cannot be required to pay a state tax levied upon the shares of stockholders, when the shares are valueless and there is no fund from which the receiver can be reimbursed for the amount of the tax without paying it from the assets of the bank to the detriment of the bank's creditors.

Appeal from Superior Court, King County.—Hon. J. W. LANGLEY, Judge. Affirmed.

*James F. McElroy*, and *John B. Hart*, for appellant. *Stratton, Lewis & Powell*, for respondent.

The opinion of the court was delivered by

GORDON, J.—Respondent, as receiver of the Merchants National Bank of Seattle, instituted this action for the purpose of having an assessment levied against said bank on the first day of April, 1895, canceled, and to restrain the officers of the county from enforcing the assessment and collecting the tax.· From a decree of the superior court, in favor of the receiver, the county has appealed.

We have so often of late decided that, in the absence of fraud or malice, the action of the assessor and the county board of equalization is final as to assessments upon personal property, that we deem it unnecessary and useless to enter anew upon a discussion of that question; and if the disposition of this case depended upon that question alone, in conformity with our previous holdings, the decree would be reversed. *Olympia Water Works v. Thurston County*, 14 Wash. 268 (44 Pac. 267); *Olympia Water Works v. Gelbach*, 16 Wash. 482 (48 Pac. 251); *Knapp v. King County*, ante, p. 567.

But a further question arises in this case which, in our opinion, necessitates a different result. The undisputed facts in the case show that the bank in question was a going concern on the first day of April, 1895, when the assessment was levied. On the 20th of May following it closed its doors and went into possession of the comptroller of the currency, and thereafter, on the 6th day of July, the respondent qualified as receiver and took possession. It is the contention of the respondent that, the bank hav-

ing gone into the hands of a receiver before the tax became due, the tax cannot be collected from him, no matter whether the bank was or was not insolvent on the first day of April. It is conceded that it is beyond the power of a state legislature to impose a tax upon a national bank; but the theory upon which our statute and similar statutes in other states in reference to the taxation of the shares of stock in national banks proceeds, is that the tax is not a primary charge against the bank but against the owners of the shares, and that the bank becomes the agent of the stockholders for the payment of the tax so levied; and the validity of such statutes has been affirmed in numerous cases by the supreme court of the United States. *National Bank v. Commonwealth*, 9 Wall. 353; *New Orleans v. Houston*, 119 U. S. 265 (7 Sup. Ct. 198); *Bell's Gap Railroad Co. v. Pennsylvania*, 134 U. S. 232 (10 Sup. Ct. 533); *Aberdeen Bank v. Chehalis County*, 166 U. S. 440 (17 Sup. Ct. 629).

Sections 21 to 23, inclusive, of the act of March 15, 1893 (Laws 1893, p. 333), are as follows:

" Sec. 21. All the shares of stock in banks, whether of issue or not, existing by authority of the United States or of the state, and located within the state, shall be assessed to the owners thereof in the cities or towns where such banks are located, and not elsewhere; in the assessment of all state, county and municipal taxes imposed and levied in such place, whether such owner is a resident of said city or town or not, all such shares shall be assessed at their full and fair value in money on the first day of April in each year, first deducting therefrom the proportionate part of the value of the real estate belonging to the bank, at the same rate, and no greater, than that at which other moneyed capital in the hands of citizens and subject to taxation, is by law assessed. And the persons or corporations who appear from the records of the banks to be owners of shares at the close of the business day next pre-

ceding the first day of April in each year shall be taken and deemed to be the owners thereof for the purposes of this section.

"Sec. 22. Every such bank or other corporation shall pay to the collector, or other person authorized to collect the taxes of the state, county, city or town in which the same is located, at the time in each year when other taxes assessed in the said state, county, city or town become due, the amount of the tax so assessed in each year upon the shares in such bank or other corporation. If such tax is not so paid, the said bank or other corporation shall be liable for the same.

"Sec. 23. The shares of such banks or other corporations shall be subject to the tax paid thereon by the corporation or by the officers thereof, and the corporation and the officers thereof shall have a lien on all the shares in such bank or other corporation and on all the rights and property of the shareholders in the corporate property for the payment of said taxes; which lien may be foreclosed by a similar proceeding as under chattel mortgages."

The prior act of the legislative session of 1891, which was upheld in *Aberdeen Bank v. Chehalis County, supra,* contained substantially all of the provisions incorporated in the above quoted sections of the act of 1893.

The record in this case further shows that the comptroller of the currency had levied an assessment against the shareholders of this bank, amounting to seventy-five per cent., and it is apparent that, if the respondent is required to pay the tax in question, he must pay it from the assets of the bank to the detriment and prejudice of the bank's creditors; and the shares being valueless, and there being no fund from which the receiver or the bank can be reimbursed for the amount of the tax, it will fall upon the bank as fully as if the bank and not the shares were primarily chargeable with the tax, and thus by indi-

rection would be accomplished a result which it is conceded would be beyond the legislature to attain.

The only case to which our attention had been directed involving this question is that of *City of Boston v. Beal*, reported in 51 Federal at page 306. The assessment under consideration in that case was made under chapter 13 of the statutes of Massachusetts, the essential provisions of which are identical with our own, and the case itself appears to be on all fours with the one we are now considering. The court held that no suit for the tax could be maintained against the receiver of an insolvent bank, where the property represented by the shares had disappeared; that, " there being nothing from which the receiver can be reimbursed, the tax will fall upon the assets of the bank, which belong to its creditors, and thereby violate the rule that the state cannot tax the capital stock of a national bank." The case was affirmed in the circuit court of appeals of the first circuit, 55 Fed. 26.

We do not perceive that the facts in the present case distinguish it from *Boston v. Beal*, *supra*, and the decree will be affirmed.

SCOTT, C. J., and DUNBAR, REAVIS and ANDERS, JJ., concur.