## Gully, State Tax Collector, *v.* First Nat. Bank in Meridian.

(Division A.   Nov. 28, 1938.)

[184 So. 615.   No. 33220.]

**J. C. Floyd,** of Meridian, for appellant.

388

**Wilbourn, Miller & Wilbourn** and **Bozeman, Cameron & Bozeman,** all of Meridian, for appellee.

400

**McGowen, J.,** delivered the opinion of the court.

The state tax collector filed his bill in the chancery court to recover from appellee, the First National Bank

in Meridian, certain taxes alleged to be due the municipality of Meridian, its separate school district state and county. The cause was removed on application of the bank to the federal district court there upon the pleadings, a judgment was entered in favor of the bank. The tax collector prosecuted an appeal to the Circuit Court of Appeals of the Fifth Circuit, where the case was affirmed. See J. B. Gully, State Tax Collector, v. First National Bank of Meridian, 81 F. (2d) 502. Thereupon the Supreme Court of the United States granted certiorari limited to the question of jurisdiction, and after considering that question, the Supreme Court of the United States, in Gully v. First Nat. Bank, 299 U. S. 109, 57 S. Ct. 96, 81 L. Ed. 70, held that the case had been improperly removed to the federal court and directed that the case be remanded to the state court.

When the order of the Supreme Court of the United State was obeyed, the appellant, Gully, amended his bill, and thereupon a demurrer was sustained thereto. The tax collector declined to amend further, and a decree final was entered for the bank, and the tax collector prosecutes an appeal here.

The bill alleged in broad terms that in April, 1930, the First National Bank of Meridian had returned for assessment its capital stock, etc., to the respective tax assessors of the county and city, and particularly set forth that these assessments had become valid, binding, and final. The bill alleged that on January 13, 1931, the First National Bank of Meridian, hereafter referred to as the "old bank," became and was insolvent and went into the hands of a receiver, that at all times from January 1, 1930, until January 13, 1931, the bank had in its hands sufficient property or assets of the shareholders of the old bank with which to pay or to reimburse itself for taxes paid on the shares of stock, it being the theory that the assessments were against the old bank as the agent of its shareholders, and the old bank had not paid

these taxes. The assessments as set forth in the bill as a copy of the rolls of Lauderdale County are as follows:
"Name—Bank, First
"Banks capital stock, surplus and undivided profits, less book value of real estate $540,135.00
"Total Valuation of all Personal Property .................................. 540,135.00."
As set forth in the bill, the copy of the assessment roll as to the municipality of Meridian is as follows:
"First National Bank

| | |
|---|---|
| 2600 shares capital stock ............. | $260,000.00 |
| Surplus and Undivided Profits ........ | 313,890.00 |
| | $573,890.00 |
| Less Real Estate .............. | 33,700.00 |
| | $540,190.00 |
| Total Value of all Personal Property .... | $540,190.00 |
| Total Tax on same ............... ...... | $ 13,504.75." |

The bill alleged that after the old bank had become insolvent and had gone into the hands of the receiver, interested parties proceeded to organize a national bank, named the First National Bank in Meridian, hereafter called the "new bank," and set forth a creditor's agreement, an assignment of the shares of stock by the individual shareholder of the old bank, and an agreement of sale to the new bank executed by the receiver of the old bank. The bill alleged that by virtue of these written agreements, the new bank obligated itself and promised to pay the taxes here involved at all events, and was liable therefor on the written exhibits on contract. As to the assignment of shares to a committee for the benefit of the new bank by the shareholders of the old, the contractual paragraph therein relied upon by the state tax collector is as follows: "That the undersigned be relieved and held harmless from any and all statutory liability as a shareholder of the First National Bank of Meridian, Mississippi."

Insofar as the contract with the receiver is concerned, there is a long preamble in which it is definitely stated that it is a desire of the contracting parties, the new bank, and the receiver to pay all the debts of the old bank, and the new bank was to provide the receiver with money so to do. When they came to contract as to how debts were to be paid, and the obligation assumed by the new bank, that contract was divided into two parts, the first was to provide for the payment of all known creditors of the suspended bank and expenses, and as to the unknown creditors the contract is as follows: "and said purchaser (the new bank) will pay the receiver such further sums, from time to time, during the period of active receivership, as the receiver may deem necessary to meet receivership expenses and to provide for the payment of such unlisted or unknown claims as may be duly established during the period of active receivership." It is conceded that the claim of the tax collector here involved was never presented to the receiver or allowed as a claim, nor was the bank ever called upon by the receiver to pay this claim or provide for its payment. The shareholders of the old bank were not parties to the proceeding, nor was there any allegation that any claim had ever been established on behalf of the taxing authorities against the shareholders on the assessments which we have set forth.

The demurrer to the bill, as well as the contracts and exhibits, are too long to set forth in a statement of the case. We may state certain additional allegations in connection with the points decided.

However, the demurrer challenged the validity of the assessments and alleged that they were absolutely void for the reason that no personal property was so definitely described as to create a lien upon any property situated in the county, or debt against anyone, and, second, that the assessment was void because it was a direct attempt on the part of the assessing authorities to levy an assessment upon the bank as such on its shares of stock,

that Section 3138 of the Code of 1930, as to taxation of national banks, did not authorize the assessment, and, if it does, that such assessment violates Section 5219 of United States Revised Statutes, 12 U. S. C. A. Section 548; that the exhibits show that the new bank did not contract with the receiver or the shareholders, to pay this claim for taxes and that it made no such contract with the tax assessor, or with anyone else.

(1) We have determined that it is unnecessary for us to decide in this case as to whether the assessments herein are void in view of the conclusion we have reached, but we have thought it proper to set forth these assessments in order to call the attention of the taxing authorities to the fact that the power to assess shares of stock in a national bank is set forth in Section 3138 and is in the following language, after directing that state banks should be assessed upon their shares of stock or capital stock in detail: "Provided, nevertheless, in case of such bank or banking association existing under the laws of the United States, a precisely similar amount shall be assessed upon and collected from the shareholders thereof at the domicile of the bank as would have been assessed upon and collected from the said bank had it been created under the laws of the state of Mississippi; but each said bank and banking association shall, nevertheless, be liable to pay any taxes as the agent of each of its shareholders, and may pay the same out of their individual profit account, or charge the same to their expense account, or to the account of such shareholder in proportion to their ownership. It will be noted that the assessment by the county assessor contains no evidence in itself of just what the assessment consisted of. We, however, pretermit a decision as to whether these assessments are void, under the various statutes of this state.

(2) As to the contention of the tax collector that the new bank is liable directly to him, as such, because of the agreement with each of the shareholders there can

be no merit. The covenant was to relieve and save harmless all statutory liability, and conceding without so deciding that statutory liability here was used in its broad sense covering any liability imposed by any statute, whether taxes or the liability, under 12 U. S. C. A. Section 64, the act of Congress relative to national banks, fixing liability upon a shareholder. We do not think there was an agreement to pay any debt of the shareholder as described therein but only to save harmless in case the shareholder had been held liable. The shareholders are not parties to this suit. Their liability insofar as this bill's allegations are concerned has not been established in such case. The contract is one of indemnity and a suit may not be brought by the creditor of the indemnitee against the indemnitor directly until the liability of the indemnitee has been established. An indemnity is more than a promise to pay; it is an agreement here to save harmless not made for the benefit of the third party, but an agreement strictly between the parties. The liability of the new bank arises exclusively out of its contract and cannot be extended beyond its terms "to save harmless." The indemnity is to do more than pay the debt as in itself the liability indemnified the costs accrued. See William Hoy v. Calvin Hansborough, Freem. Ch. 533, wherein the general rule is stated.

(3) The contract quoted from in the creditor's agreement remanded the new bank's liability to pay those claims which were established against the old bank during the receivership. The claim here involved was not so established and within the strict terms of the contract, which the new bank had a right to make in order to limit and make certain its liability. They did not become liable for this claim. But at all events, the claim here propounded is not one even if the old bank could have been sued and held liable for the taxes here involved because of its action in procuring, as alleged, the assessment to be made, as set forth. When the old bank be-

came insolvent, this claim did not survive against its receiver after it became insolvent. In other words, the assets of the old bank could not be taken from its creditors and paid to or for the benefit of the stockholders. There seems to be no exception to this rule. See Gully v. First National Bank of Meridian, supra, 81 F. (2d) 506, wherein that court said on the question of estoppel of the old bank in the case at bar: "After insolvency the personal property cannot be taxed in the receiver's hands. Rosenblatt v. Johnston, 104 U. S. 462, 26 L. Ed. 832. To compel the receiver to pay taxes which can lawfully be imposed only upon the shareholders and their shares would be to take money from the creditors to pay obligations due by the shareholders, and is inadmissible. Stapylton v. Thaggard (C. C. A.) 91 F. 93; City of Boston v. Beal (C. C.) 51 F. 306, affirmed (C. C. A.) 55 F. 26; Brown v. French (C. C.) 80 F. 166; Baker v. King County, 17 Wash. 622, 50 P. 481." We think the above authorities answer all the contentions as to the old bank's being estopped and as to the finality of the assessment and that the authorities which appellant cites in support of his view are without exception addressed to actions between the taxing authorities and a national bank as a going concern.

We, therefore, are of the opinion that the court correctly sustained the demurrer to the amended bill.

Some complaint is made by the appellant that he was not permitted to show by an amendment that the old bank, by a course of dealing, permitted itself to be assessed upon its share of stock and paid its assessment theretofore for many years. This would be cumulative recitals and not changing the rules of law governing the case. So there was no error in refusing the amendment.

Affirmed.