## STATE v. SECURITY NATIONAL BANK AND OTHERS. FRANK P. HIXON AND OTHERS, APPELLANTS.[1]

August 29, 1919.

No. 21,278.

**Taxation of national bank stock — former decision followed.**

1. On a former hearing it was held that a national bank cannot, under our statute, be required to pay an assessment levied upon its stock, unless it has in its hands, earnings, or at least assets of some sort, belonging to the stockholders. It was further held that the stock involved in this case was subject to taxation for the year 1915. This decision is followed.

**Same — bank made collector of tax from stockholders.**

2. The tax in such case is not against the bank, nor in rem against the stock, but is a tax against the stockholder of the bank on account of the ownership of the stock, and the bank is constituted a tax collector to collect the tax from the stockholder.

**Liability of stockholder absolute.**

3. The tax is an absolute liability of the stockholder. Its vitality does not depend upon the contingency of the bank's having assets of the stockholder from which it may be required to make payment.

**Taxation — validity of personal judgment dependent on personal notice.**

4. Personal judgment may not be taken against the stockholder for the tax without personal service of citation upon him. Personal service of notice, in the assessment and the levy of taxes, is not essential to due process of law. But, in judicial proceedings, notice before judgment is a fundamental right. A personal judgment in tax proceedings has all the elements of a judgment in personam and personal notice is

[1]Reported in 173 N. W. 885.

essential to jurisdiction to render it. The bank is not the agent of the stockholder to receive service of such notice. The judgment rendered in this case against stockholders without personal notice or attachment of property was without jurisdiction and is void.

### Stockholders bound by tax assessed against the bank.

5. A tax on stock assessed in the name of the bank is a valid tax and is binding as such upon the stockholders. The validity of any method of procedure for collection of the tax levied in this case, other than the method which was pursued, is not before the court for decision.

After the former appeal reported in 139 Minn. 162, 165 N. W. 1067, the case was tried before Hale, J., who made findings and ordered judgment against each stockholder of defendant national bank for such proportion of the total tax assessed, together with penalties and costs, as the number of shares of stock held by each on May 1, 1915, bore to the total number of shares outstanding on that date. The motions of Frank P. Hixon, Elizabeth W. Harrison, and of the administrators of the estate of H. M. Carpenter, deceased, appearing specially therein to object to the jurisdiction of the court over them and over that estate, to set aside the findings and conclusions as to them and to that estate, for the reason that the court had not jurisdiction over them, were denied. From the judgment entered pursuant to the order for judgment against the moving parties, they appealed. Reversed.

*Louis K. Hull* and *Lancaster & Simpson,* for appellants.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *William M. Nash,* County Attorney, and *Frank J. Williams,* Assistant County Attorney, for respondent.

HALLAM, J.

1. In March, 1915, the Security National Bank of Minneapolis negotiated a sale of its assets to the First National Bank of Minneapolis for $5,000,000. The purchase price was placed as a credit on the books of the First National Bank to "the Security National Bank of Minneapolis in liquidation." As part of the same transaction it was agreed that the Security Bank should liquidate, that its stockholders should surrender their stock for cancelation and subscribe for part of a new issue of stock of the First National Bank, the new stock to be paid for out of the purchase price to be paid by the First National Bank for the

assets of the Security National Bank. The physical transfer of assets was made before May 1, and upon such transfer the Security Bank ceased doing a banking business, but the transaction was not closed until after May 1. The surrender of stock by the stockholders of the Security Bank, and the issuance of the new stock by the First National Bank, took place after that date. The result was that on May 1 the stock of the Security Bank was still outstanding in the ownership of its stockholders.

The Security Bank failed to return to the assessor its list of stockholders as banks are required by law to do. G. S. 1913, § 2018. The assessor assessed the $5,000,000 on deposit as money and credits. On October 16, 1915, the Minnesota Tax Commission, after notice to the bank and a hearing, directed the county auditor of Hennepin county to assess the stock of the Security National Bank "in the manner provided by section 2018, G. S. 1913, for the current year as omitted property." The county auditor thereupon assessed the stock in the name of the bank. No list of stockholders was called for or returned. The assessment was not paid. The bank was held not liable for the payment of this tax, for reasons which will be hereafter more fully stated. State v. Security Nat. Bank of Minneapolis, 139 Minn. 162, 165 N. W. 1067.

On the second trial of the case the state called for a list of the stockholders of the bank, with the amount of stock held by each on May 1, 1915, and this was produced in court by the attorneys for the bank, with the stipulation that, by its production, no rights were waived. The court then, without citation or notice to any of the persons named on the list, ordered personal judgment against each of them for a proportion of the tax. Thereafter certain of the persons named as stockholders appeared specially, and moved to vacate the decision, on the ground that the court had no jurisdiction to give personal judgment against them. The motion was denied and they appealed.

The pertinent statutes are as follows:

Section 2018 provides that: "The stock of every bank * * * organized under the laws of this state or of the United States, shall be assessed and taxed in the town, city or village where such bank * * * is located, whether the stockholders of such bank reside in such place or not, and shall be assessed in the name of the bank."

Section 2019 provides that: "In every bank * * * there shall be kept at all times a full and correct list of the names and residences of

the stockholders or owners or parties interested therein, showing the number of shares, and the amount held, owned or controlled by each party interested, * * * and the accounting officer of each bank * * * shall furnish to the assessor a duplicate copy of such list, verified by oath, which shall be returned and filed with the county auditor."

Section 2021 provides that: "To secure the payment of taxes on * * * bank stock * * * every bank * * * shall, before declaring any dividend, deduct from the annual earnings of the bank such amount as may be necessary to pay any taxes levied upon the shares of the stock, and such bank * * * shall pay the taxes, and shall be authorized to charge the amount of such taxes paid to the expense account of such bank."

This court held on the former appeal that the stock was a taxable asset on May 1, 1915. We have no misgivings as to the correctness of this ruling. The stock was a very valuable asset and continued to be such, until, by contemporaneous transactions, it was surrendered and canceled, and the stock in the First National Bank was issued. There was no point of time at which it could be said that neither one nor the other was in existence. On May 1 the stock in the First National Bank was not taxable because it had not come into existence. The stock in the Security Bank was still in existence and it was taxable.

On the former appeal it was held that the bank was not liable for the tax on the ground that a bank is liable to pay taxes levied on its stock only out of earnings, at least out of assets of some sort, belonging to the stockholders and in the hands of the bank, and that the Security Bank had no such earnings or assets in its possession at any time after this tax levy was made.

2. The contention is now made that the stockholders are not liable for the payment of this tax. This involves an inquiry as to the nature of the tax. Clearly the tax must fall within one or the other of three classes. It must be a tax against the corporation, or a tax in rem against the stock, or a tax against the stockholders on account of the ownership of the stock.

It is clearly not a tax against the bank. A state legislature has no power to tax the capital of a national bank. National Bank v. Commonwealth, 9 Wall. 353, 19 L. ed. 701; Owensboro Nat. Bank v. Owensboro,

173 U. S. 664, 19 Sup. Ct. 537, 43 L. ed. 850, and this court has held that our legislature has not, by this statute, attempted to do so. State v. Security Nat. Bank of Minneapolis, 139 Minn. 162, 165 N. W. 1067. Nor is there any manifestation of intent to tax the bank for the property of the stockholder.

The tax is not in rem against the stock. In this state real estate taxes are in rem against the land. Personal property taxes are not in rem, but are in personam against the taxpayer. Laird Norton Co. v. County of Pine, 72 Minn. 409, 412, 75 N. W. 723; State v. Eberhard, 90 Minn. 120, 95 N. W. 1115. This tax is of the same character as other taxes upon personal property. This court has so held. State v. Barnesville Nat. Bank, 134 Minn. 315, 159 N. W. 754; State v. Security Nat. Bank of Minneapolis, 139 Minn. 162, 165 N. W. 1067.

This method of taxation of stock in banks is in vogue in many states. In some states, the tax is levied, in form, in the name of the stockholder, Nevada Nat. Bank v. Dodge, 119 Fed. 57, 56 C. C. A. 145; Tappan v. Merchants' Nat. Bank, 19 Wall. 490, 22 L. ed. 189; Corry v. Baltimore, 196 U. S. 466, 25 Sup. Ct. 297, 49 L. ed. 556; see Merchants & Mnfrs. Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. ed. 236, as it formerly was in this state. G. S. 1878, c. 11, § 24. In some, the tax is levied in form, in the name of the bank. Aberdeen Bank v. Chehalis County, 166 U. S. 440, 17 Sup. Ct. 629, 41 L. ed. 1069; National Bank v. Commonwealth, 9 Wall. 353, 19 L. ed. 701; Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. ed. 892. In some, the provision is simply for taxation of the shares of stock. National Bank v. Commonwealth, 9 Wall. 353, 19 L. ed. 701; Citizens Nat. Bank v. Kentucky, 217 U. S. 443, 30 Sup. Ct. 532, 54 L. ed. 832.

In all of these cases the result is the same. It is in substance a tax against the stockholders on account of the ownership of the stock, and the bank is constituted a tax collector to collect the tax from the stockholders.

3. The contention is made, that whatever the nature of the tax, there is no liability for its payment, except under section 2021, out of earnings in the hands of the bank, and that if the bank has no such assets of the stockholders in its hands, there is no liability resting upon anyone to pay, and the state must lose the tax. The contention is far-reaching. If sustained, it would not only relieve the stockholders in a case like this,

where the bank has paid over all of its earnings and divided all of its assets among its shareholders, but it would relieve the stockholders of every bank which for the time being does not make earnings. Perhaps the state could by statute accomplish this result. We should not be easily convinced that any such result was intended. Taxpayers, generally, are required to pay taxes on their personal property whether their business prospers or not. We need not look for the affirmative provisions making the payment of the tax an absolute liability. Absolute liability is the rule and it is to be presumed. It should require clear language to relieve stockholders from taxation upon their stock in the event the corporation has made no earnings, or, having made them, has paid them over to the stockholders. We do not think the statute evinces such an intention. The provision, requiring the bank to make payment under the conditions stated in section 2021, is, as the language of that section states, "to secure the payment" of the tax, that is, to furnish assurance that the state will receive payment of the tax. In our opinion it is only security for the payment of the tax, and does not relieve the stockholder from payment in the event the bank has no funds of the stockholder with which to pay his tax for him. The proceeding by which the bank is required to pay the tax of the stockholder has been likened to a proceeding in garnishment. National Bank v. Commonwealth, 9 Wall. 353, 362, 19 L. ed. 701; State v. Security Nat. Bank of Minneapolis, 139 Minn. 162, 165 N. W. 1067. The analogy may be carried this step farther; as in the case of garnishment the proceeding assumes a principal liability.

The contention is made that the statute provides no means of enforcing the tax against the stockholder. If this were true it might lend color to the argument that no such liability is intended, but we are not prepared to hold that our tax laws are inadequate for the collection of this tax from the stockholder.

But we cannot sustain the judgment against these appellants because it was given without notice to them. Counsel for the state contends, and the trial court held, that judgment may be entered against the persons whose names are returned by the bank as stockholders, without service of notice upon them, on the theory that the bank represents them, and that service upon the bank is service upon them.

We cannot sustain this position. We are of the opinion that the court acquired no jurisdiction to render a personal judgment against the stock-

holders. Counsel for the state contends that personal service of notices is not considered an essential to due process in respect to taxation. This is true as to the assessment and levy of taxes. Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 239, 10 Sup. Ct. 533, 33 L. ed. 892; Merchants' & Mfr's. Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. ed. 236. But it has never been held that a personal judgment may be obtained in a tax proceeding without personal notice. "There are certain fundamental rights which our system of jurisprudence has always recognized * * * one of these is notice before judgment in all judicial proceedings." Bardwell v. Collins, 44 Minn. 97, 46 N. W. 315, 9 L.R.A. 152, 20 Am. St. 547; Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565; Baker v. Baker, Eccles & Co. 242 U. S. 394, 37 Sup. Ct. 152, 61 L. ed. 386. A judgment in personal tax proceedings possesses all the elements of any judgment in personam. It is enforceable by execution. Personal notice is as essential to give jurisdiction to render a personal judgment in a tax proceeding, as in any other case.

In Tappan v. Merchants' Nat. Bank, 19 Wall. 490, 22 L. ed. 189, cited by the state, the court used language to the effect that all owners of stock in banks "have," by becoming owners, "submitted themselves to the jurisdiction of the state." But we think the court referred to jurisdiction "for purposes of taxation" and not to jurisdiction for the purpose of obtaining judgment against the person. The court made this clear when it said: "If the state has actual jurisdiction of the person of the owner, it operates directly upon him. If he is absent, and it has jurisdiction of his property, it operates upon him through his property."

In Corry v. Baltimore, supra, the court sustained the power of the state to impose a personal liability upon the owner. But there is a difference between imposing a personal liability upon the owner and the enforcement of that liability by giving personal judgment against one alleged to be the owner without notice to him. The application for a judgment against the stockholders involves something more than the validity of the tax. For example, it involves the question whether the person named is in fact a stockholder, and this question cannot be determined against him, without an opportunity to be heard, in a proceeding to enforce payment of the tax, any more than it could be in an action to enforce the liability of stockholders for the debts of the corporation. See Wilson v. Seligman, 144 U. S. 41, 12 Sup. Ct. 541, 36 L. ed. 338. Nor

does our statute, either expressly or by implication, attempt to confer upon the corporation the agency to receive service of notice in an action to obtain personal judgment against the stockholder, or to represent or defeat his interest in such an action. The judgment rendered against appellants without personal notice or attachment of property was without jurisdiction and is void.

5. But it does not follow, as counsel for the state seems to fear, that, if their contention is not sustained, the power of the state to collect the tax must fail. There is no doubt that a tax on stock assessed in the name of the bank, is a valid tax, and is binding as such upon both the bank and its stockholders. Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. ed. 892; Merchants' & Mfrs.' Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. ed. 236; Nevada Nat. Bank v. Dodge, 119 Fed. 57, 56 C. C. A. 145; Tappan v. Merchants' Nat. Bank, 19 Wall. 490, 22 L. ed. 189; James Clark Distilling Co. v. Cumberland, 95 Md. 468, 52 Atl. 661; Corry v. Baltimore, 196 U. S. 466, 25 Sup. Ct. 297, 49 L. ed. 556, and we commend the language of Justice Mitchell in County of Redwood v. Winona & St. Peter Land Co. 40 Minn. 512, 517, 41 N. W. 465, 42 N. W. 473, as follows: "The taxing power, when acting within its legitimate sphere, is one which knows no stopping-place until it has accomplished the purpose for which it exists, viz., the actual enforcement and collection from every lawful object of taxation of its proportionate share of the public burdens; and, if prevented by any obstacles, it may return again and again until, the way being clear, the tax is collected." The validity of any method of procedure, save that pursued in this case, has not been argued or presented by the record, and we refrain from making our decision broader than the issues presented.

Judgments reversed.