[No. 3131.   Feb. 6, 1926.]

STATE v. STATE TRUST & SAVINGS BANK et al.

[245 Pac. 253.]

SYLLABUS BY THE COURT

Subsections 1-3 of section 504 of chapter 133, Laws 1921, interpreted, and **held** that a receiver of an insolvent domestic bank cannot be charged with the payment of taxes assessed against the shareholders, when it appears that the bank made no earnings out of which dividends could be declared upon the stock, and that none were declared during the period for which the tax was assessed.

Appeal from District Court, Bernalillo County; Helmick, Judge.

Action by the State against the State Trust & Savings Bank and another for taxes. Judgment for defendants, and the State appeals. Affirmed, and cause remanded, with directions.

Fred E. Wilson, Atty. Gen., and James W. Norment, Tax Collector, of Albuquerque, for the State.

Merrict C. Mechem and Frank W. Vellacott, both of Albuquerque, for appellees.

OPINION OF THE COURT

PARKER, C. J.   The state (appellant) brought an action against the State Trust & Savings Bank, a domestic banking corporation, and T. K. D. Maddison, receiver of said corporation, for taxes alleged to be

[1] 37Cyc p. 828 n. 41

due upon the shares of the capital stock of the stock-holders of said corporation for the year 1923. The appellees filed an answer, in which among other things it was affirmatively alleged that the said bank had at no time subsequent to December 31, 1922, declared or paid any dividend to the stockholders of said bank. They further alleged that the said bank became insolvent, suspended business, and closed its doors on January 17, 1924, and the said Maddison was, on April 7, 1924, appointed receiver of said bank. They further alleged that during the years 1923 and 1924 the capital stock of the said bank was so impaired by losses, and to such an extent, that the directors of said bank could not have legally declared and paid dividends to its stockholders, and that during the year 1923, and during that portion of 1924 in which it continued to do business, the losses of said bank exceeded its gross income.

The appellant filed a demurrer to the above portions of the answer upon the ground that the allegations therein contained did not state facts sufficient to constitute a defense to the complaint of plaintiff. The court overruled the demurrer, and, the appellant electing not to plead further, and to stand upon its said demurrer, the court rendered judgment in favor of the defendants and dismissed the complaint. From this judgment the cause is here on appeal.

The whole question turns upon a proper interpretation of chapter 133 of the Session Laws of 1921. Subsection 1 of section 504 of that act provides that the stockholders of every bank, trust, or mortgage loan company, in this state, organized under the laws of this state, or of the United States, shall be assessed and taxed on the value of their shares of stock in the county school district, city, town, or village where such bank, trust, or mortgage loan company is located, whether such stockholders reside in such place or not, and shall be assessed in the name of the bank, trust, or mortgage loan company as the agent of the sharehold-

ers. The balance of the section provides for a list of the shares by the officers of the bank and the filing of such list with the state tax commission. It further provides the method to be pursued by the state tax commission in determining the value of such shares. Subsection 2 contains no provision of interest in this consideration. Subsection 3 is as follows:

"To secure the payment of taxes on bank, trust or mortgage loan company stock, every bank, trust and mortgage loan company shall, before declaring any dividend, deduct from the annual clearings of the bank, trust or mortgage loan company, such amount as may be necessary to pay any taxes thereafter to become due upon the shares of stock, and such bank, trust or mortgage loan company, or officers thereof, shall pay the taxes, and shall be authorized to charge the amount of such taxes paid to the expense account of such bank, trust or mortgage loan company."

It is to be observed that in subsection 3 above set out it is made the duty of banks to deduct from the annual earnings of the bank such amount as may be necessary to pay the taxes to become due upon the shares of stock, and that such bank shall then pay the taxes assessed upon such stock and shall charge the amount so paid to the expense account of such bank. It is, of course, clear that when a bank deducts from the annual earnings of the bank, which is the only available source from which dividends can be paid to the stockholders, it is in effect deducting from the dividends, which otherwise would be paid to the stockholders, the amount of such tax. The provision that the bank may charge the amount so paid to the expense account of the bank is but an indirect way of making the deduction from the dividends otherwise payable to the stockholders. Nothing in this section can be interpreted to the effect that there is any liability of the bank to pay the taxes out of its assets, independent of such earnings as in the due course of administration of the business of the bank will be distributed to the stockholders in the form of dividends. The bank is not made primarily liable to pay the tax out of its general assets, but the bank is appointed the agent of the stockholders

to pay out of their dividends the taxes assessed against them.

In Minnesota they have a statute identical in import, and almost identical in terms, with ours. It is section 2021, Gen. Stat. of Minn. 1913. In State v. Barnesville National Bank, 159 N. W. 754, 134 Minn. 315, the Supreme Court of Minnesota interpreted this statute. That was a suit for taxes against a national bank, but the argument and discussion are clearly applicable to a state bank. The court says:

"Statutes of this general character have been enacted in practically all of the different states, and as applied to national banks are sustained by the federal courts. The tax thus imposed is not. however, a tax against the bank or its assets, but one against the shares of stock or stockholders. First National Bank v. Kentucky, 9 Wall. 363, 19 L. Ed. 701; Aberdeen Nat. Bank v. Chehalis County, 17 S. Ct. 629, 166 U. S. 440, 41 L. Ed. 1069. Though the provisions of the statute require the officers of the bank to deduct sufficient from the dividends and earnings accruing to the stockholders, and to pay the tax therefrom, that does not create a liability on the part of the bank to pay the tax from its own funds. Stock in banks and other corporations is private property, often of great value, and the purpose of the statute was to subject the holders thereof to taxation in harmony with the value of the stock, ascertained and determined in the manner pointed out by the statute. In many banks, both national and those organized under state laws, the stockholders do not reside where the corporation is located; many reside in other states. If the tax be not paid, and becomes delinquent, and the usual procedure is adopted in the collection of the same, no jurisdiction can be acquired over the nonresident, and as to him the proceeding must fail, leaving the resident stockholder alone liable. That, of course, results in inequality in taxation of this kind, and to obviate the situation, and to place all stockholders, resident or nonresident, upon the same footing, the plan of imposing the duty of payment upon the bank from dividends due the stockholders was adopted as the only effective method of working equality as to all concerned. And while the bank is required to pay the tax, and charge the same to its expense account, the statute contemplates that such payment will be made from the earnings due the stockholders, and not from the assets of the bank. In this view it seems clear that payment cannot be enforced against the bank, particularly at a time when it is insolvent and in the hands of a receiver. It has been so decided. City of Boston v. Beal (C. C.) 51 F. 306; Stapylton v. Thaggard, 91 F. 93, 33 C. C. A. 353; Baker v. King County, 50 P. 481, 17 Wash. 622.

"In the case at bar counsel for the state concede that a atx of this character is one against the stockholders, and not

against the bank, and they also concede that, if in such case the bank becomes insolvent before the tax falls due, payment cannot be enforced against its assets in the hands of a receiver.    But they insist that, since the tax in the case at bar became due before the bank became insolvent, the obligation to pay imposed by the statute became effective at that time, and may now be enforced against the receiver.    We do not concur in this contention.    The tax became due January 1, 1914, but was not delinquent until March 1st following.    The bank was adjudged insolvent and a receiver appointed on January 18th.    If liability attaches to the bank, by reason of the failure of its officers to pay the tax, in any such case it should be limited to cases where it appears that there were earnings and profits due the stockholders after the tax became due, and sufficient to pay the same in whole or in part. Any other view would subject the bank to the rule of absolute liability, which we think was not intended by the statute."

This case, which we deem well considered and sound, covers the whole controversy in the case at bar. In our case, it is alleged, and by the demurrer to the answer admitted, that there were, no funds available out of which dividends could have been declared to the stockholders in this bank. There is no direct liability resting upon the bank to pay taxes on the stock of the stockholders, unless the bank has funds out of which to pay dividends, and which in a sense belong to the stockholders. This case was followed in State v. Security Nat. Bank, 173 N. W. 885, 143 Minn. 408.

In Florida the statute (Rev. Gen. St. 1920, § 705), provides:

"And for the purpose of securing the collection of taxes assessed upon said shares, each banking association shall pay the same as the agent of each of its shareholders, and the said association may retain so much of any dividend belonging to any shareholder as shall be necessary to pay taxes levied upon its shares."

In Stapylton v. Thaggard, 91 F. 93, 33 C. C. A. 353, the Circuit Court of Appeals of the Fifth Circuit interpreted this statute. The court said:

"As we construe the cases, from First Nat. Bank v. Commonwealth 9 Wall. 353 [19 L. Ed. 701] to First Nat. Bank v. Chehalis County, 17 S. Ct. 629, 166 U. S. 440 [41 L. Ed. 1069], the bank is made to pay the taxes assessed by the state against its shareholders, when the state statutes lay such duty upon the bank, upon the theory that the shares are valuable, and that the bank has assets in its hands be-

longing to the shareholders from which it can recoup. Where a bank is insolvent, and has passed into the hands of a receiver, the shares are generally worse than worthless; and the receiver has no assets belonging to the shareholders which can be applied to the payment of taxes assessed on shares. In such case, we are of opinion that the tax assessed against the shares of the bank cannot be collected from the receiver, or from assets in his hands. The case of City of Boston v. Beal (C. C.) 51 F. 306, is directly in point; the Massachusetts statute being substantially the same as the statute of Florida, in providing that the shares of stock shall be assessed to the owner, and the tax paid by the bank."

In City of Boston v. Beal (C. C.) 51 F. 306, it is said:

"The only question which arises in this case is whether, under the state of facts here presented, the receiver is liable. It appears that at the time this suit was brought the assets of the bank were in the hands of a receiver, and that the property representing the capital stock had been swept away. This tax, therefore, if held to be valid, is not a tax upon the shareholders, but a tax upon the assets of the bank which belong to the creditors. If the tax is paid by the bank, it can have no lien upon the shares of stock for repayment, as provided by section 10 of the statute above cited [Pub. St. Mass. 1882, c. 13], because the property representing such shares has ceased to exist. Under these circumstances, I do not think that the receiver can be held liable for this tax, or that it is a provable claim against the assets in his hands."

The position of the Attorney General in behalf of the state is that this statute, by reason of the fact that it provides that the bank "shall pay the tax," places the bank under the absolute liability to the state to do what the statute says it must do, and that consequently the receiver is under the same obligation and liability, and should be compelled to pay out of the assets in his hands, the same as he pays other debts of the bank. He cites Boston & A. R. C. v. Mercantile Trust & Deposit Co., decided by the Maryland Court of Appeals, and reported in 34 A. 778, 82 Md. 535, 38 L. R. A. 112. We do not deem this case as militating against the conclusion above outlined, for the reason that the Maryland statute differs widely from ours. Section 138 of article 81 of the Public General Laws of Maryland (1888) provides in regard to non-resident stockholders as follows:

"But the tax assessed on such stock shall be levied and collected from said corporation, and may be charged to the

account of such nonresident stockholders in the said corporation, and shall be a lien on the stocks therein held by such stockholders, respectively, until paid."

Section 141 of said article provides in case of resident stockholders in domestic banking corporations that:

"But the tax assessed upon said respective taxable values of such respective share or shares of stock, shall be collected from such bank, corporation or joint stock company, and when so paid shall be charged by said bank, corporation or joint stock company to the account of such stockholders or shareholders, respectively."

The Maryland court no doubt correctly held that these statutes imposed upon the bank the duty in any event to pay the tax upon the shares of stock and to seek its remedy from the shareholders. It is conceded in that case that this was a correct interpretation of the statute while the corporation was a going concern, but it was contended that, when the corporation became insolvent and its property had passed into the hands of receivers, such tax could not be held to be a debt of the corporation, for the payment of which its assets were liable. In reply to that, the court observed that the tax was by the express terms of the statute charged to and made payable by the corporation, and that, this being so if the tax was due at the time of the insolvency, when obviously the insolvency could not in any manner affect the right to demand payment out of the company's assets. The argument, of course, is sound, but it all hinges upon the first conclusion reached to the effect that the Maryland statute created a primary liability on the part of the bank to pay the tax, which is not the case under statutes like ours.

The Attorney General cites and relies upon National Bank v. Commonwealth, 9 Wall. 353, 19 L. Ed. 701. That was a case originating under the Kentucky statute, and was an action brought against a national bank which was solvent and a going concern. The statute of Kentucky (Rev. St. 1852, c. 83, art. 2, § 1), laid a tax as follows:

"On bank stock, or stock in any moneyed corporation of loan or discount, 50 cents on each share thereof, equal to one hundred dollars, or on each one hundred dollars of stock therein, owned by individuals, corporations, or societies."

The statute (chapter 83, art. 10, § 1) further provided:

"The cashier of a bank and the treasurer of any other institution whose stock is taxed, shall, on the first day of July in each year, pay into the treasury the amount of tax due. If such tax be not paid, the cashier and his sureties shall be liable for the same and twenty per cent. upon the amount, and the said bank or corporation shall thereby forfeit the privileges of its charter."

It is to be observed that this bank was a going concern, and no question was raised in the case as to whether, in case a bank became insolvent and had been placed in the hands of a receiver, the tax might still be collected out of the capital of the bank. The court held that these provisions of the Kentucky statute did not lay the tax upon the capital of the bank, but laid the tax upon the shareholders, which was held to be allowable. The court further held that the prohibition in the acts of Congress under which national banks were organized exempted merely the capital of the bank, and did not extend to the mode which might be adopted by a state to collect taxes from the shareholders. The court did not hold that in any event a tax against shareholders could be collected out of the capital and assets of a national bank.

Counsel also cites Union Bank of Richmond v. City of Richmond, 26 S. E. 821, 94 Va. 316. This case merely holds that the tax levied was a tax upon the shares and not upon the capital of the bank, and that the mere fact that the statute required the bank to pay the tax did not establish that it was a tax upon the capital of the bank. Of course, this was a case of a going concern, and no question was presented as to whether in a case where the value of the stock had been wiped out by financial losses, and where the only source of payment would be the capital of the bank itself, the law could be sustained—they having in Virginia a statute ex-

pressly prohibiting the levying of taxes upon the capital of the bank.

The Attorney General cites other cases, but we do not deem them to be pertinent to this consideration. He suggests that there is no other provision of law for the taxing of a stockholder in a banking corporation, and if the corporation itself cannot be held liable to pay the tax, the state will lose its revenues. This suggestion may be answered by saying that we are concerned only in what the Legislature has provided in the legislation under consideration upon this subject. Whether other provisions of law exist whereby shareholders may be reached and the taxes collected from them we cannot decide, because it is not involved. It was evidently deemed wise, for the purpose of adjusting the taxation equally among resident and nonresident stockholders, that the bank should be charged with the duty of paying out of its earnings the tax, deducting the same from the amount of dividends which might be declared therefrom by simply charging the amount to the expense account of the bank. It is further suggested by the Attorney General that there would be no prohibition against the state providing by law that a domestic banking corporation should in all events pay the tax on the shares owned by the various shareholders. This is undoubtedly correct. But in seeking for the intention of the Legislature and a proper interpretation of this statute, it is well to take into consideration the fact that this statue applies, not only to domestic corporations, but to national banks organized under the laws of Congress. It would seem clear from what has heretofore been said that a national bank under the circumstances in this case could not in any event be made to pay a state tax out of its capital. It was the design of this legislation to treat all banking institutions in the same way, and not to subject a domestic bank to any burdens which could not be imposed upon a federal bank. This consideration is pointed out in

First National Bank v. Moon, 170 P. 33, 102 Kan. 334, L. R. A. 1918C, 986, as follows:

"Considered in the light of its origin, and of its clear purpose to place state banks and loan companies on the same basis for taxation as national banks, the tax law becomes easy of interpretation, notwithstanding the loose phraseology employed. It would not be possible to levy a valid tax on the capital stock, the surplus, the undivided profits, or other property of a national bank, because of the restrictions contained in the federal law. Consequently an intention to tax property of that character to state banks or loan companies cannot be imputed to the Legislature. Neither may stockholders be taxed on property which belongs to the bank and not to them, and the result is, the subject of taxation stated in the first subdivision of the tax law is, shares of stock belonging to stockholders."

In this case the bank had no money belonging to the shareholders, and the receiver has none, and he could not pay this tax without applying moneys from the capital of the bank, which the legislation does not authorize or require.

For the reasons stated, the judgment of the lower court will be affirmed and the cause remanded, with directions to proceed accordingly; and it is so ordered.

BICKLEY and WATSON, JJ., concur.