SCHOOL DISTRICT OF CITY OF LANSING *v*. CITY OF LANSING.

1. TAXATION—SCHOOL TAXES—NEGLIGENCE OF CITY TREASURER—LIABILITY OF CITY.

School taxes, levied and assessed on personal property, which are not collected through default and neglect of the city treasurer result in loss to the school district for which the city is liable.

2. SAME—BANK STOCK—ASSESSMENT—STOCKHOLDERS—DIRECTION TO ASSESS BANK.

It is the statutory duty of a tax assessing officer to assess the owners of shares of stock of a bank directly but statute permits assessment on stock to be made upon bank in lieu of individual assessment where bank requests that assessment be so made, hence letter of president of bank to chairman of city board of assessors stating "you are hereby authorized to assess all stock of the bank to" president, *et al.,* was correctly found to have contemplated that assessment was to be levied against the bank (1 Comp. Laws 1929, § 3402).

3. SAME—BANK AS STATE'S AGENT TO COLLECT TAXES FROM INDIVIDUAL STOCKHOLDERS.

  The State may make a bank its agent to collect taxes from individual stockholders.

4. SAME—STATE LEVY ON CAPITAL STOCK, SURPLUS AND UNDIVIDED PROFITS OF NATIONAL BANK.

  Since a State law which taxes a national bank is unconstitutional, a State may not tax the capital stock, surplus, undivided profits and other property of a national bank as such a tax would be against the corporation.

5. SAME—BANK STOCKS—CLAIM AGAINST RECEIVERS.

  Claim for taxes levied against shares of stock of a bank whose president had requested that assessment be made against bank rather than individual shareholders *held,* not a provable claim against assets of bank in hands of receiver as the shares are then worthless and the receiver has no assets of the shareholder which can be applied toward payment of the taxes assessed.

6. SAME—CITY TREASURER—NEGLIGENCE—BANK RECEIVER.

  City treasurer *held,* not negligent in failing to present claim for taxes on stock of shareholders in national bank against receiver of such bank or in failing to seize personal property of the bank prior to appointment of the receiver as no obligation rested upon such receiver to pay tax in question nor was there a lien on the assets of the bank to secure its payment.

7. SAME—BANK STOCK—SITUS OF ASSESSMENT.

  All of the stock of a national bank is properly assessable by a city where all of the stockholders resident in the county resided in the city.

8. SAME—BANK STOCK—STATUTES—ALTERNATIVE ASSESSMENT.

  The provision of the general property tax law permitting assessment of tax on bank stock to be made upon bank in lieu of an individual assessment against each of the stockholders in order to expedite collection of such taxes was not intended to relieve the stockholders from payment of the tax in the event the tax became uncollectible from the bank (1 Comp. Laws 1929, § 3402).

9. SAME—CITY TREASURER—NEGLIGENCE—BANK STOCK.

  In an action by school district against city in which it was located for loss of taxes on stock in a national bank, record

*held,* to show that city treasurer was negligent in failing to file claim against receiver of corporate holder of 29,050 of the 30,000 shares of stock and in failing to attempt to collect the tax from the individual owners of the remaining shares.

10. COSTS—TAXATION—MUNICIPAL CORPORATIONS.

In action by school district against city for loss sustained through negligence of latter's treasurer in the collection of school taxes, costs are allowed plaintiff where it prevails on appeal.

Appeal from Ingham; Carr (Leland W.), J. Submitted June 9, 1938. (Docket No. 58, Calendar No. 40,064.) Decided October 4, 1938. Rehearing denied November 10, 1938.

Action by School District of City of Lansing against City of Lansing for sums due for failure to collect taxes on bank stock. Judgment for plaintiff. Defendant appeals. Plaintiff cross-appeals. Reversed and remanded.

*Kelley & Seelye,* for plaintiff.

*Joseph W. Planck,* for defendant.

CHANDLER, J. This action was instituted by the school district of the city of Lansing in an effort to impose liability upon the city of Lansing for the alleged negligence of its treasurer in failing to pursue all methods provided by law to collect certain taxes levied upon the shares of stock of the Capital National Bank for school purposes in 1932 in the sum of $4,464.72. Plaintiff contends that because defendant's treasurer was negligent in not taking proceedings to secure payment of the said personal property tax either against the Capital National Bank, or its receiver, or against the receiver of the Guardian Detroit Union Group, Inc., the principal stockholder of

the Capital National Bank, or other stockholders, the city must answer to the school district for the loss of its revenue.

The 1932 personal property tax became a lien on December 1, 1932. 1 Comp. Laws 1929, § 3429. The bank operated on a restricted basis after February 11, 1933, and a conservator was appointed on March 23, 1933, who was replaced by a receiver on March 13, 1934. As a consequence of the financial collapse of the institution, plaintiff has never received any satisfaction for the tax assessment upon the shares of stock of the bank.

*School District of City of Lansing* v. *City of Lansing,* 260 Mich. 405, and *School District of City of Lansing* v. *City of Lansing,* 264 Mich. 272, establish the rule that if default on the part of the city treasurer is shown the city is liable to account to the school district for any losses resulting by reason of such negligence. It is thus unnecessary to discuss the duty of the treasurer to collect these taxes or the liability arising by reason of neglect of that duty.

Plaintiff argues, and the argument was approved by the lower court, that the bank had assumed to pay the tax which would have been assessed against the owners of its stock in the first instance under the provisions of 1 Comp. Laws 1929, § 3402 (3) (Stat. Ann. § 7.14 [3]), and that the bank, under the following proviso of the section of the statute mentioned, became liable for the payment thereof.

*"Provided further,* That in cases where a bank, trust, deposit or security company desires to pay the personal property tax, on its stock, for its stockholders and two or more stockholders are assessable in the same assessment district, then the aggregate value of such stock as is assessed as personal property in such district, may be assessed in one lump

sum to the bank, trust, deposit or security company
as personal property, in lieu of being assessed indi-
vidually to each stockholder, if such bank, trust, de-
posit or security company shall request such assess-
ment to be made in that manner.''

The lower court also found the defendant negli-
gent in failing to file a claim in the receivership pro-
ceedings of the Capital National Bank, and entered
judgment for plaintiff in the sum of $3,125.30, the
bank having paid dividends totaling 70 per cent., and
no showing having been made that there was a proba-
bility of further disbursement. Defendant appeals
from this judgment and from a denial of a motion
for a new trial. Plaintiff filed a cross-appeal, al-
leging that the court was in error in disallowing
$1,339.42 of its claim.

It had been the custom of the bank for some years
prior to 1932 to pay the personal property taxes on
its stock. On May 19, 1932, Mr. Gorman, president
of the bank, wrote the following letter to Mr. Chris-
topher, chairman of the board of assessors of the city
of Lansing:

''In response to your request of May 14, 1932, you
are hereby authorized to assess all stock of the bank
to Frank E. Gorman, *et al.*''

Thereafter, an entry was made on the personal tax
roll for 1932 to ''Frank E. Gorman, *et al.*, c/o Capi-
tal National Bank, Lansing, Mich.'' Directly below
this entry and in the same square of the ruled sheet
appeared, ''Capital National Stock, bank stock 30,000
shares @ $21.20.'' Opposite the latter entry, the
valuation of the stock was inserted as being $636,000,
and then State, county, and school taxes were estab-
lished as $2,327.76; $1,857.12 and $4,464.72, respec-
tively, or a total of $8,649.60. It also appears from

the record that other bank stock was assessed in the identical manner. Furthermore, the State and county tax based upon this assessment was paid by the city to the county treasurer on November 10, 1933, even though the same had not been collected from the bank or anyone else.

Defendant contends that the bank had not requested that the assessment be made in one lump sum to it, and that the letter written by Mr. Gorman to the chairman of the board of assessors was but a request to assess the stock to the various individual stockholders. Without the request of the bank, it was the statutory duty of the assessor to assess the owners of the shares directly, and though one might admit for the sake of argument that the letter referred to above is ambiguous, there could be but one reason for writing it, namely, that the bank desired to be assessed in one lump sum upon the shares of its stock as it had been in the past. No other explanation can be given for this communication, and the trial court was correct in concluding that an assessment against the bank was contemplated by the letter of the president.

One of the questions presented is whether the city treasurer was negligent in failing to file a claim for the delinquent personal property taxes with the receiver of the Capital National Bank. The record shows that Miss Lois Chase went into the office of treasurer for the defendant city about January 15, 1933, and remained therein until January, 1935. At the earlier date, the original December, 1932, tax roll was in the office, and the assessment upon the stock of the bank appeared thereon. During the months of January, February, and March, 1933, no effort was made to collect these taxes, and though the treasurer was ready to receive payment of taxes, payment

thereof was not being enforced. The first day after the bank was opened under the custody of the receiver, Mr. Ruonavaara, personal property tax collector for the defendant, interviewed the receiver and was advised that these taxes were to be paid by the Guardian Detroit Union Group, Inc., which held 29,050 of the outstanding 30,000 shares. No effort was made to collect the tax from any of the other stockholders, and no claim was filed with the receiver of the Capital National Bank though the treasurer had knowledge of the public notice to present claims against the bank to Joseph W. Gleason, receiver, which notice appeared in the Lansing State Journal from November 29, 1934, to and including March 4, 1935.

It further appears that in April, 1933, Mr. Ruonavaara furnished the receiver of the Guardian Detroit Union Group, Inc., with a statement of the taxes owing, but no formal claim was ever filed with said receiver, although on May 21, 1934, Miss Chase sought leave of the court to file a delayed claim. The motion was denied.

Appellant argues that the city treasurer was not negligent in failing to file a claim with the receiver of the Capital National Bank because the receiver of an insolvent bank is not liable for personal property taxes on stock of the bank even though the bank has requested that the taxes be assessed to the bank rather than to the shareholders.

It should be borne in mind at the outset that the State has the right to make a bank its agent to collect taxes from individual stockholders. *National Bank* v. *Commonwealth,* 9 Wall. (76 U. S.) 353; *First National Bank of Aberdeen* v. *Chehalis County,* 166 U. S. 440 (17 Sup. Ct. 629), and that a State law which taxes a national bank is unconstitutional.

*M'Culloch* v. *State of Maryland,* 4 Wheat. (17 U. S.) 316; *Smith* v. *First National Bank of Tecumseh,* 17 Mich. 479. And in *First National Bank of St. Joseph* v. *Township of St. Joseph,* 46 Mich. 526, it was held that the power of the State to tax a national bank comes from congressional enactment and it must be obeyed in thorough good faith. Also a State may not tax the capital stock, surplus, undivided profits and other property of a national bank for this constitutes a tax against the corporation, and one which is not within the power of the State to levy. *First National Bank of Gulfport* v. *Adams,* 258 U. S. 362 (42 Sup. Ct. 323).

Plaintiff relies upon *Clement National Bank* v. *Vermont,* 231 U. S. 120 (34 Sup. Ct. 31). In that case a statute of the State of Vermont provided for a tax upon deposits in national banks, and it further provided that if a national bank so elected it might pay to the State all the prescribed taxes and deduct them from the interest or deposits of the persons from whom they became due. This statute was declared valid, but the case is not analogous to the present situation for there the bank was apparently a solvent and going institution and had funds of depositors in its hands from which such taxes could be paid, while in the instant case the bank was insolvent and was placed in the hands of a receiver subsequent to the assessment of personal property taxes.

This problem arose in *City of Boston* v. *Beal,* 51 Fed. 306, affirmed 5 C. C. A. 26 (55 Fed. 26), which is one of the leading cases upon the subject. There, suit was brought against the receiver of a national bank to recover certain taxes due October 1, 1891, the receiver having been appointed November 2, 1891. A State statute provided that shares of stock in all banks were to be taxed to the owners thereof, to be

paid in the first instance by the bank, which, for reimbursement, was to have a lien on the shares and all the rights of the shareholders in the bank property. In denying relief, the court used the following language which is particularly appropriate to the instant case:

"It appears that at the time this suit was brought the assets of the bank were in the hands of a receiver, and that the property representing the capital stock had been swept away. This tax, therefore, if held to be valid, is not a tax upon the shareholders, but a tax upon the assets of the bank which belong to the creditors. If the tax is paid by the bank, it can have no lien upon the shares of stock for repayment, * * * because the property representing such shares has ceased to exist. Under these circumstances, I do not think that the receiver can be held liable for the tax, or that it is a provable claim against the assets in his hands."

The *Beal Case* was followed and its doctrine clearly stated in *Stapylton* v. *Thaggard,* 33 C. C. A. 353 (91 Fed. 93), where a Florida statute made banks the tax-collecting agents of the State for taxes levied upon their shares of stock, with a lien upon so much of any dividend belonging to any shareholder as was necessary to pay any taxes levied upon the shares. A national bank became insolvent and a receiver was appointed. When the tax collector threatened to levy and sell personal property in the hands of the receiver to satisfy taxes levied upon all the personalty of the bank, the receiver sought an injunction. In granting relief, the court said:

"As we construe the cases, from *National Bank* v. *Commonwealth,* 9 Wall. (76 U. S.) 353 to *First National Bank of Aberdeen* v. *Chehalis County,* 166 U. S. 440 (17 Sup. Ct. 629), the bank is made to pay

the taxes assessed by the State against its shareholders, when the State statutes lay such duty upon the bank, upon the theory that the shares are valuable, and that the bank has assets in its hands belonging to the shareholders from which it can recoup. Where a bank is insolvent and has passed into the hands of a receiver, the shares are generally worse than worthless; and the receiver has no assets belonging to the shareholders which can be applied to the payment of taxes assessed on the shares. In such case, we are of opinion that the tax assessed against the shares of the bank cannot be collected from the receiver, or from assets in his hands.''

In *Rosenblatt* v. *Johnston,* 104 U. S. 462, the same result was reached upon the theory that the property still remains in the bank though in the hands of the receiver and is therefore exempt.

Appellant relies most strongly upon *Gully* v. *First National Bank in Meridian* (C. C. A.), 81 Fed. (2d) 502. In that case, the First National Bank of Meridian was placed in the hands of a receiver on January 13, 1931, who transferred most of the assets to a newly organized bank known as the First National Bank in Meridian on June 4, 1931. In 1933, the State tax collector sued the new bank for State, county, and municipal taxes for 1930, assessed on returns made by the old bank, alleging that the new bank had agreed to pay in taking over the assets of the old bank. The allegation was also made that the taxes were due by the stockholders, but the bank was by law made liable to pay them as the shareholder's agent and in turn charge the shareholder, and that the bank had had available funds on hand belonging to the shareholders to protect its interest but had neglected to make payment on December 1, 1930, when payment was due, and it became thereby di-

rectly and primarily liable for the taxes. The court repudiated the claim, saying:

"To compel the receiver to pay taxes which can lawfully be imposed only upon the shareholders and their shares would be to take money from the creditors to pay obligations due by the shareholders and is inadmissible. * * * A tax on the personal property of the bank has not been and cannot be lawfully assessed or imposed; and while a tax lawfully imposed on the shares according to section 3138 may be required to be paid by the bank as agent for the shareholders so long as the bank is a going concern and can have a real recourse on the shareholders, as is held in *First National Bank of Aberdeen* v. *Chehalis County*, 166 U. S. 440 (17 Sup. Ct. 629), *Van Slyke* v. *Wisconsin*, 154 U. S. 581 (14 Sup. Ct. 1168), and *National Bank* v. *Commonwealth*, 9 Wall. (76 U. S.) 353, insolvency ends the statutory agency to pay and the personal assets of the bank cannot thereafter be taken away from creditors to pay the shareholder's debt."

The case was reversed upon jurisdictional grounds and directed to be removed to the State court in *Gully* v. *First National Bank in Meridian*, 299 U. S. 109 (57 Sup. Ct. 96), but the reasoning is not questioned and is in accord with the undisputed weight of authority.

See, also, *Gourd* v. *Guaranty National Bank*, 90 Okla. 298 (217 Pac. 358); *Baker* v. *County of King*, 17 Wash. 622 (50 Pac. 481); and *State* v. *Barnesville National Bank*, 134 Minn. 315 (159 N. W. 754).

The same result has been reached where State banks were concerned. *Walcott* v. *McCarroll*, 88 Okla. 279 (213 Pac. 296); *Ward County* v. *Baird*, 55 N. D. 670 (215 N. W. 163); *In re Feliciana Bank & Trust Co.*, 143 La. 44 (78 South. 169); *State* v. *State Trust & Savings Bank*, 31 N. M. 282 (245 Pac. 253);

*Taylor* v. *Hale,* 186 Ark. 873 (56 S. W. [2d] 428, 87 A. L. R. 1016).

Apparently the only jurisdiction militating against the inevitable conclusion that appellant is not liable for negligence based upon the failure of its treasurer to file a claim against the receiver of the Capital National Bank is North Carolina where, in the case of *Town of Rockingham* v. *Hood,* 204 N. C. 618 (169 S. E. 191), an insolvent State bank was held liable for taxes assessed against its stock while the bank was solvent. Liability is founded on the premise that since no appeal was taken from the State board of assessment when the assessment was made upon valueless stock, defendant was precluded from raising the question. The court said:

"Conceding that the bank was insolvent when the tax was assessed by the State board of assessment, yet it did not follow the procedure mapped out by law and it cannot now be heard to complain. It would be a like hardship on a municipality relying on this tax regularly assessed to now be deprived of it. The municipality is not in fault, it is the fault of the bank in not appealing if the assessment was incorrect."

Appellee argues that our statute creates an entirely different sort of obligation than that arising under statutes which specifically provide for assessment to the stockholders with provision that the bank shall be liable to pay the tax as agent of the stockholders, retaining a lien upon dividends accruing to the latter.

In *Shippee* v. *Riverside Trust Co.,* 113 Conn. 661 (156 Atl. 43), an application for advice was made by the temporary receiver concerning payment of claims of the State for taxes upon the capital stock and saving deposits of defendant corporation. Section 1272

of the General Statutes of Connecticut provided for payment of a one per cent. tax on the fair market value of each share of stock but no provision was made for charging the shareholders therewith. The court stated:

"Although our statute lacks the express provision for a lien upon dividends on stock or right of recovery or both appearing in same, and the right to obtain reimbursement is dependent only on the general principles governing recovery for the payment of the debt of another, * * * we cannot see that the situation is so changed thereby, or in any other material respect, from that obtaining in the cases above cited as to warrant us in construing the statute as contemplating that the receiver shall either pay the tax at the expense of creditors of the corporation itself, or (lacking assets, remaining after payment of such creditors, distributable to the stockholders, on final settlement) be relegated to the doubtful expedient of seeking recovery, in individual actions, from the several stockholders."

The permissive feature of our statute was present in *Ward County* v. *Baird, supra.* It therefore follows that the argument of plaintiff is not tenable.

The whole problem is summarized in the following quotation from 3 Cooley on Taxation (4th Ed.), p. 2529, § 1269:

"Statutory liability is often imposed on corporations for taxes due from its stockholders or bondholders, in which case reimbursement is expressly provided for or is implied. The statutory liability of the corporation to pay the tax against stockholders carries with it an implied lien in favor of the corporation against the stock and the dividends for reimbursement. Generally, payment cannot be enforced against the corporation, where the tax is one on the

stockholders, where the corporation is insolvent and in the hands of receivers."

We conclude, therefore, in accord with the authorities herein discussed, that the treasurer of the defendant city was not negligent in failing to present a claim to the receiver of the Capital National Bank for the reason that no obligation rested upon said receiver to pay the tax in question.

The foregoing conclusion applies with equal force to the failure of the treasurer to attempt to enforce payment of the tax by seizing personal property of the bank prior to the appointment of a receiver. It now appears that the bank was an insolvent institution at that time, and if enforcement of the tax involved had been attempted by this method, the treasurer would have been confronted with the same problem she would have been had she filed a claim against the receiver, namely, that the assets of the insolvent bank must first be applied to the payment of creditors and depositors before being used to pay taxes assessed against the shareholders.

We are now presented with two questions, both of which must be answered in the affirmative in order to establish liability of the defendant.

1.  Where the stock of a bank is assessed to the bank, as in the instant case, and such bank has no funds or assets in its hands belonging to the shareholders to meet such assessment, is there a legal obligation existing on the part of the owners of the stock to pay their proportionate amount of the tax resulting from such assessment?

2.  Was the treasurer of the defendant city negligent in not enforcing payment against said shareholders?

Both of these questions were before the trial judge who answered the first in the negative, obviously

rendering unnecessary a discussion of the second by him.

All of the stock of the Capital National Bank was properly assessable in the city of Lansing as all of the stockholders of said institution that were residents of Ingham county resided in said city. 1 Comp. Laws 1929, § 3402 (3) (Stat. Ann. § 7.14 [3]). The principal stockholder was the Guardian Detroit Union Group, Inc., a corporation having its office and principal place of business in the county of Wayne, and which owned 29,050 shares. The remaining 950 shares were held by 19 individuals who were directors of the bank, and 18 of whom were financially responsible residents of Lansing.

It is apparent and always has been that something might occur between the date of assessment and the date when taxes become due that would render the collection thereof from the bank impossible. In such a case, if the contention of defendant is to prevail, the beneficiary will suffer the loss, and the shareholders will be allowed to escape payment of their just proportion of the taxes necessary for the support and maintenance of government, local, county and State. We do not believe that the legislature intended thus to relieve stockholders in banks and trust companies of burdens in connection with governmental expenses. Neither can we find where the courts of this or any other jurisdiction have given aid and comfort to anyone seeking to escape liability from just and legal taxation.

The provision of the statute authorizing an assessment against the bank for the value of the shares therein of its shareholders, when so requested by the bank, is for the purpose of rendering the assessment and collection of said taxes more expedient and convenient for all parties concerned, and to simplify the

collection of the tax from nonresident shareholders. It contemplates that the shares of stock shall be assessed and not the capital stock of the bank itself, and that the tax shall be assessed *in solido* against the bank as agent for its stockholders, to be paid by the bank and collected by it from the shareholders, either by deduction from dividends of the amount so paid, or by a charge to expenses which would be the equivalent thereof.

We are confronted with a situation where the bank could not pay because it had no dividends in its hands belonging to the shareholders, and, being insolvent, it had no funds with which to pay expenses, excepting such as belonged to creditors and depositors, and these funds must be kept inviolate. It had assumed, when it presumably had funds with which to pay, the payment of taxes on behalf of the stockholders. Does this assumption relieve the real obligors from the payment of a just obligation? The assessment was made at the request of the corporation which was acting for and on behalf of the stockholders, in reality as their agent. If the agent fails to fulfill its obligation, are the real principals, the real debtors, to be permitted also to escape?

Few cases have considered this question, yet those that have arisen indicate that there may be such recovery from the stockholders.

In *Pratt* v. *State,* 25 Ala. App. 258 (145 South. 163), the question presented was whether a bank stockholder was liable in a civil suit for the *ad valorem* tax assessed against his stock when the bank failed subsequent to the assessment which was made in its name. The statute provided:

"Every share of any incorporated bank * * * shall be assessed * * * at 60 per cent. of its fair and reasonable market value. * * * It is the intent and meaning of this section that the real estate of every

bank shall be assessed against the bank as other real estate in this State is assessed to the owners thereof, and that such bank shall pay the taxes thereon, and that the shares shall be assessed for taxation against the shareholders * * * and that the bank shall pay for the shareholders respectively the tax so assessed against their shares. * * * It shall be no ground of objection to such assessment of shares that it is entered upon the assessment book in the corporate name of the bank" (Gen. Acts 1923, p. 161, § 6).

The court held that the stockholders were individually liable on the ground "that the legislature intended that the tax there required to be assessed was intended not only as a charge against the stock, but a personal obligation of the owner of the stock and enforceable by a suit at law." The case differs from the case at bar in that the owners of the stock were assessed in the first instance rather than the bank.

In *Ward County* v. *Baird, supra,* actions were brought against the receiver of insolvent banking corporations to enforce the collection of taxes assessed on shares of stock in such corporations prior to their insolvency. The statute involved was, in many respects, similar to our statute, particularly with reference to permissive assessment, and the contention was made that since the banks requested the taxes to be assessed in their corporate names, such taxes became charges against the banks rather than against the stockholders. In repudiating this claim, the court said:

"It follows then that since there never was any obligation on the part of the bank to pay any taxes on account of its shares of stock, except out of its distributable assets, the plaintiffs have no valid claim against the receiver. Their remedy, if any they have, is against the individual stockholders."

A case analogous to the present one is that of
*State* v. *Security National Bank,* 143 Minn. 408 (173
N. W. 885). There the defendant bank sold all its
assets to a similar institution which placed $5,000,000
as a credit on its books in favor of the defendant
bank. This was assessed as money and credit of the
defendant bank and its stock was evaluated accord-
ingly. Upon nonpayment of the assessment, re-
covery was denied in *State* v. *Security National
Bank,* 139 Minn. 162 (165 N. W. 1067). Thereafter,
in a second trial, the court, without citation or notice
to any of the persons named on the list of stock-
holders, ordered personal judgments against each of
them for a proportionate share of the tax. The court
held that this was a tax against the stockholders and
that the bank was constituted a collector to collect
the tax from them. The statute provided:

"To secure the payment of taxes on * * * bank
stock, * * * every bank * * * shall, before de-
claring any dividend, deduct, from the annual earn-
ings of the bank such amount as may be necessary to
pay any taxes levied upon the shares of the stock,
and such bank * * * shall pay the taxes, and shall
be authorized to charge the amount of such taxes
paid to the expense account of such bank (G. S. 1913,
§ 2021)."

Another section of the statute provided that the
assessment should be made in the name of the bank.
In disposing of the question, the court said:

"The contention is made that, whatever the na-
ture of the tax, there is no liability for its payment,
except under section 2021, out of earnings in the
hands of the bank, and that if the bank has no such
assets of the stockholders in its hands, there is no
liability resting upon any one to pay, and the State
must lose the tax. This contention is far-reaching.
If sustained, it would not only relieve the stock-

holders in a case like this, where the bank has paid over all of its earnings and divided all of its assets among its shareholders, but it would relieve the stockholders of every bank which for the time being does not make earnings. Perhaps the State could by statute accomplish this result. We should not be easily convinced that any such result was intended. Taxpayers, generally, are required to pay taxes on their personal property whether their business prospers or not. We need not look for affirmative provisions making the payment of the tax an absolute liability. Absolute liability is the rule, and it is to be presumed. It should require clear language to relieve stockholders from taxation upon their stock in the event the corporation has made no earnings or, having made them, has paid them over to the stockholders. We do not think the statute evinces such an intention. The provision requiring the bank to make payment under the conditions stated in section 2021 is, as the language of that section states, 'to secure the payment' of the tax; that is, to furnish assurance that the State will receive payment of the tax. In our opinion it is only security for the payment of the tax, and does not relieve the stockholder from payment in the event the bank has no funds of the stockholder with which to pay his tax for him.''

Although the judgment of the lower court was reversed upon jurisdictional grounds, the foregoing discussion disposed of the merits of the controversy.

The record is conclusive that the treasurer of defendant was negligent in failing within the time allowed to file a claim against the receiver of the Guardian Detroit Union Group, Inc., and in failing to attempt to collect the tax from the individual owners of stock of the Capital National Bank. Such negligence should not deprive the beneficiary of the tax, or place an added burden upon the taxpayers

to account for the deficiency created by such negligence.

The judgment is reversed, and the cause remanded to the circuit court for the county of Ingham, with directions to enter a judgment in favor of plaintiff and against defendant in the sum of $4,464.72. Plaintiff having prevailed in this appeal, costs are allowed against defendant.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., took no part in this decision.