**92 P.2d 987**

**FIRST NAT. BANK IN ALBUQUERQUE v. STATE TAX COMMISSION et al.**

**No. 4417.**

Supreme Court of New Mexico.

July 7, 1939.

C. C. McCulloh, Asst. Sp. Tax Atty., of Santa Fe, and A. M. Fernandez, Asst. Atty. Gen., for appellants.

Coors & Adams, of Albuquerque, for appellees.

PER CURIAM.

The original opinion and the opinion on motion for rehearing are withdrawn and the following substituted:

Opinion

BRICE, Justice.

The question is whether the trial court erred in holding that the common stock of the appellee bank had no value subject to taxation for the years of 1934 to 1938 inclusive, according to Sec. 141-504, N.M. Sts.1929, which is:

"The stockholders of every bank * * * shall be assessed and taxed on the value of their shares of stock therein, * * * and shall be assessed in the name of the bank, * * * as the agent for the stockholders. * * * To aid the tax commission in determining the value of such shares of stock, the acting officer of every such bank, trust or mortgage loan company shall furnish a sworn statement to the tax commission, showing the amount and number of shares of capital stock, the amount of its surplus * * * and undivided profits, and the amount of its legally authorized investment in real estate. * * *

"The tax commission shall deduct the amount of investment in real estate to the extent of the assessed value thereof, from the aggregate amount of such capital, surplus or reserve fund, and undivided profits, and the remainder shall be taken as a basis for the valuation of such shares in the hands of the stockholders, subject to the provisions of law requiring all property to be assessed at its true and full value; Provided, however, that the amount so carried by any such bank as surplus, to an amount equal to fifty per cent. of the capital stock of said bank, shall not be considered as adding anything to the actual value of such capital stock. * * * *"

The stock of the appellee corporation consists of $250,000 par value, non-taxable preferred, owned by the Reconstruction Finance Corporation, and $250,000 common, owned by individuals. According to the bank's sworn statement, furnished to the taxing authorities for the year of 1934 the bank carried $100,000 in its surplus account, its undivided profits were $25,054 and the assessed value of its real estate was $328,770.

The assessed value of the real estate, the amount of surplus and the undivided profits varied for each of the several years; and the amount of shares of stock outstanding did not vary materially.

The book value, and theoretically at least, the actual value of the bank's shares of stock, was the sum of the par value of its shares added to its surplus and undivided profits; which for the year of 1934 was $625,054.

The legislature could have provided for the separate taxing of the stock and real estate, each at its full value, as was point-

ed out by Mr. Justice Zinn in First State Bank of Mountainair v. State Tax Comm., 40 N.M. 319, 59 P.2d 667; but it is ap-. parent that one of the objects of the statute is to prevent an indirect double taxation of real estate by excluding from, the value of the shares the bank's real estate otherwise taxed, which enters into its value, and taking the balance of the book value as the value of the stock for taxing purposes with the concession that the bank's surplus, to the extent of an amount equal to one-half the capital stock should not be taken into consideration in arriving at its taxable ·value; the latter no doubt to encourage the building of an adequate surplus, or to allow for losses.

The taxing authorities arrived at the value of the common stock for taxing purposes by deducting from the aggregate amount of the bank's capital, surplus and undivided profits, the assessed value of its real estate and the amount carried as surplus, which did not in any year amount to fifty percent of the capital stock of the bank.

It is the contention of appellee that the words "such capital" as used in the formula for determining the taxable value of the stock, have reference to the par value of the common stock only, and that the $250,000 of preferred stock cannot be taken into consideration as a factor for such purpose.

The preferred stock, though owned by the Reconstruction Finance Corporation and for that reason non-taxable, is as much a part of the capital structure as the common stock. If appellee's contentions are correct, then if the preferred stock is held by individuals it cannot be taken into account in arriving at the taxable value of the common stock; yet it was the intention of the legislature that all the bank's shares of stock, that ordinarily represent its net assets, should be taxed against the stockholders in an amount equal to their book value, after deducting the value of the bank's real estate otherwise taxed, and the deductible surplus. The trial court's conclusion cannot be correct, as it is opposed to the whole legislative theory of valuing the shares of bank stock for taxation.

In the capital structure the preferred shares are represented in the deductible real estate value and surplus equally with the common shares.

It is true, as appellee argues, the preferred and common shares are not necessarily of the same value, and the formula for taxing the stocks does not take this into consideration; but exact equality in taxation is seldom achieved, and this manner of assessing bank stock seems to be a reasonable solution of a problem not without its difficulties. But in any event there is no contention that the shares of common stock are over valued in fact.

We think the following tabulations, taken from the appellant's brief, correct-

ly illustrate the respective contention of the parties:

### Contentions of Appellants

| Capital stock (This includes | | |
|---|---|---|
| $250,000 common and $250,000 preferred) | | $500,000 |
| Surplus | | 100,000 |
| Undivided profits | | 25,054 |
| | | $625,054 |
| Less Deductions: | | |
| Surplus | $100,000 | |
| Real Estate Assessment upon which taxes are paid | 328,770 | |
| Total $ | | $428,770 |
| Assessed value for common stock for 1934: | | $196,284 |

### Contentions of Appellee

| Capital Stock (Common & Preferred) | | $500,000 |
|---|---|---|
| Less Preferred stock exempt | | 250,000 |
| Balance (Common stock), | | 250,000 |
| Surplus | | 100,000 |
| Undivided Profits | | 25,054 |
| | | $375,054 |
| Less Deductions: | | |
| Surplus up to 50% Cap. Stock | $100,000 | |
| Real Estate | 328,500 | |
| | | $428,500 |
| Assessable value for common stock for 1934 | | None |

When the bank doubled its capital, and issued shares of stock accordingly, its capital structure was increased likewise. Theoretically its stock had been theretofore taxed, through its real estate, though in fact it was not taxed at all. But with the increased capital, the deductions for real estate and surplus did not equal the value of the shares, surplus and undivided profits, and a taxable value was the result. If the $250,000 increase had been common stock, the taxable value of the common shares would have been exactly the same, with the same capital structure.

The words in the New Mexico statute "The stockholders of every bank * * * shall be assessed and taxed on the value of their shares * * * therein" had reference to *all* stockholders of banks and *all* shares of bank stock; to the extent of the state's power or authority to tax such shares. The authority to tax "all shares" of national banks is conferred by Sec. 5219 U.S.Rev.Sts., 12 U.S.C.A. § 548.

That this authorized the taxing of preferred shares held by the Reconstruction Finance Corporation, such as are here involved, was settled by the decision of the Supreme Court of the United States in Baltimore National Bank v. State Tax Commission, 297 U.S. 209, 56 S.Ct. 417, 80 L.Ed. 586, affirming the same case reported in 169 Md. 65, 180 A. 260. Since that decision the Congress, by the Act of March 20, 1936, Sec. 1, Ch. 160, 49 Stat. p. 1185, Sec. 51d, Title 12 U.S.C.A., provided that: "Notwithstanding any other provision of law or any privilege or consent to tax expressly or impliedly granted thereby, the shares of preferred stock of national banking associations, and the shares of preferred stock, capital notes, and debentures of State banks and trust companies, acquired before or after March 20, 1936, by Reconstruction Finance Corporation, * * * shall not, so long as Reconstruction Finance Corporation shall continue to own the same, be subject to any taxation by the United States, by any Territory, dependency, or possession thereof, or the District of Columbia, or by any

State, county, municipality, or local taxing authority, whether imposed, levied, or assessed on, before or after March 20, 1936 * * *."

The only limitation on the power to tax such preferred stock is that it cannot be taxed while owned by the Reconstruction Finance Corporation. If that corporation should sell appellee's preferred stock, it would immediately become subject to state taxation in the hands of any purchaser.

■ It is suggested that as national banks were not authorized to issue preferred stock at the time the New Mexico statute in question was enacted, that such stock was not within the purview of the statute. The same may be said of Sec. 5219 U.S.Rev.Sts., yet the Supreme Court of the United States in the Baltimore National Bank case held that the authority to tax applied to preferred stock which national banks were first authorized to issue in 1933, Sec. 51d, Title 12 U.S.C.A. The New Mexico statute is broad enough to include all stock of all banks, and is only limited in that regard by the federal statutes on the subject.

We find no authority, and none is cited by counsel, that supports appellee's contentions.

The statute of the State of Maine for taxing bank stock is quite similar to that of New Mexico. The part material to this case reads: "The board of state assessors shall thereupon determine the value of said shares of stock and deduct therefrom the proportionate part of the assessed value of such real estate, vaults, and safe deposit plant. Upon the value of said shares so determined after making said deductions, the board of state assessors shall assess an annual tax of fifteen mills for each dollar of such assessed value so determined. * * *" Ch. 12, Rev.Sts. of Maine, 1930, Sec. 77.

As authorized by the Constitution of Maine, the Governor, in behalf of the taxing authorities submitted the following question to the Supreme Judicial Court of Maine for answer:

"Is it the duty of the State Tax Assessor under the provisions of sections 76 and 77 of chapter 12, Revised Statutes of Maine, to determine the value of and assess an annual tax against shares of preferred stock issued by trust companies organized under the laws of this state and banking institutions organized under the laws of the United States and doing business in this state, when such stock is held by private individuals, private firms, and private corporations?

"Answer 2. As this question is presented, we are of opinion that it is the duty of the State Tax Assessor to determine the value of and assess an annual tax against such share of preferred stock when the same is held by private individuals, private firms, and private corporations not exempt from taxation thereon." In re Opinion of the Justices, 133 Me. 521, 177 A. 897, 898.

The statutes mentioned in the question are those from which we have quoted.

The court, in answer to another question, held that the exempt preferred stock should not be valued or assessed.

A question somewhat similar was decided by the Supreme Court of Michigan in National Bank of Detroit v. City of Detroit, et al., 272 Mich. 610, 262 N.W. 422, 424. The question was whether $675,000 of stock in the Federal Reserve Bank should be allocated to the common stock only in the calculation for determining the taxable value of that class of stock. The Michigan Court said:

"The investment in the Federal Reserve Bank stock was not made on the basis of the common stock and surplus, but on that of the entire capital stock, both common and preferred, and surplus. The pertinent provisions of the statute read: 'The cash value of each share shall on the absence of other satisfactory evidence be deemed to be the amount determined by adding together the capital, surplus and undivided profits, deducting therefrom the aggregate for all shares of the deductions aforesaid and dividing the result by the number of shares into which the capital stock is divided.' Paragraph 8, § 8, as amended by section 1 of Act. No. 94, P.A.1931. The tax law contains no specific provision in regard to preferred stock in banks. * * *

"There is nothing in the quoted provisions to warrant an allocation of a deduction entirely to common stock, even though actual payment was made out of funds derived from the sale of common stock.

If, in the instant case, the preferred stock were owned by a private individual, so that it would be taxable, the plaintiff bank might not argue so strenuously that the $675,000 investment should be deducted only from the common stock, without allocating any of it to the preferred stock. It should not be allowed to profit because its preferred stock happens to be owned by a nontaxable entity, by claiming that the deduction should only be made from its taxable stock. The Federal Reserve stock was a capital asset, and cannot be allocated to either the common or preferred stock, but must be considered as an investment made from the capital structure supplied by both kinds of stock. * * *"

Now the statute of Michigan provides that the value of securities *represented by the exempt stock* should be deducted. If this was the law in New Mexico, then appellee's contention would be correct; but in arriving at the conclusion that the deduction for the Federal Reserve stock should be allocated to both classes in calculating the value of the common stock, the court concluded that if the preferred was taxable the deductions would be allocated to both classes. As we have no provision in our law for the deduction of the value of securities representing the preferred stock, the deductions must, according to the holding of the Michigan Court, be allocated to both stocks.

■ It is asserted that, as Sec. 141-504, N.M.Sts.1929, is applied by appellant, the

appellee bank is taxed in a manner not permitted by Sec. 5219 Rev.Sts.U.S., 12 U.S.C.A. § 548.

The appellee is taxed only upon the value of its real estate, and this is authorized by the federal statute mentioned. The tax in question is against the stockholders, on their respective shares (Schuylkill Trust Co. v. Commonwealth of Pennsylvania, 302 U.S. 506, 58 S.Ct. 295, 82 L.Ed. 392; Des Moines National Bank v. Fairweather, 263 U.S. 103, 44 S.Ct. 23, 68 L.Ed. 191), and not against the bank, except in the capacity of agent for the several stockholders. The purpose of the statute in that regard is to provide an expeditious and convenient means for taxing purposes for the benefit of both the taxing officials and the stockholders. If no earnings accrue to the stockholders, the bank cannot be compelled to pay the taxes out of its own funds. State v. Security Nat'l Bank, 143 Minn. 408, 173 N.W. 885; School Dist. of City of Lansing v. Lansing, 286 Mich. 244, 281 N.W. 883.

■ Each of the stockholders is a party to the assessment to the extent of his own stock. It is a matter of simple computation to determine the amount of taxes assessed against any stockholder, or class of stock. As there was $250,000 par value of each class, it follows that one-half of the 1934 taxes was assessed against the holders of common stock and the other half against the holder (Reconstruction Finance Corporation) of the preferred stock. The assessment against the holders of the common stock is valid, and that against the holder of the preferred stock for 1934 is void. It was not assessed for subsequent years.

■ Appellee asserts that: "Section 141-504 N.M.S.A., 1929 Comp., as construed in the court's opinion and as applied by appellants, denies to common stockholders of appellee the equal protection of the laws in violation of the 14th Amendment to the Constitution of the United States in that it wholly relieves from the burden of indirect double taxation common stockholders of banks owning real estate and not having preferred stock issued to the Reconstruction Finance Corporation, a privilege which it denies to common stockholders of banks, such as appellee, which own real estate and do have preferred stock issued to the Reconstruction Finance Corporation."

We have pointed out that the assets of the bank are represented by both classes of stock, totaling $500,000. If appellee had issued $500,000 in common stock or had outstanding $250,000 of preferred stock subject to taxation, the tax against each share of its common stock would be exactly the same. In other words, the fact that the stock held by the Reconstruction Finance Corporation is exempt from taxation does not affect appellee and its holders of the common stock. The State alone loses thereby.

It matters not, therefore, whether the preferred stock is held by the Reconstruction Finance Corporation or an individual,

or whether the new stock is preferred or common; each share of the common stock would, in any case, be taxed at the same value. There is no discrimination.

The real basis of appellee's complaint is the fact that the legislature, with great liberality, has provided for certain deductions from the value of bank stock for taxing purposes, that exempts it from taxation if the value of the bank's real estate and deductible surplus is equal to or exceeds the value of its shares of stock, as it did in appellee's case prior to the issuance of its preferred stock. But now that such deductible items are less than the value of the outstanding stock, it necessarily follows that the latter has a taxable value under the provisions of the statute.

The tax against the preferred stock for 1934. (one-half of the tax assessed) is void; the other half assessed for that year, and the assessments for 1935, 1936, 1937 and the proposed assessment for 1938, against the common shares are each and all valid.

The cause is reversed and remanded with instructions to enter judgment consistent herewith. Motion for rehearing overruled.

It is so ordered.

BICKLEY, C. J., and ZINN and SADLER, JJ., concur.

MABRY, J., did not participate.